KING, APPELLANT, *v.* MAGAW, D. B. A. AKRON CARTAGE CO., APPELLEE.

(No. 4718—Decided October 9, 1957.)

*Mr. E. F. Mooneyham,* for appellant.
*Messrs. Bixler & Van Berg,* for appellee.

DOYLE, J.   The sole question in the appeal from a judgment of the Common Pleas Court of Summit County is whether an amended petition filed by one Cy Richard King states a cause of action against one Russell M. Magaw.

The trial court sustained a demurrer to the pleading, and,

the petitioner not desiring to plead further, the court entered its judgment dismissing the petition. The plaintiff, King, is the appellant in this court.

The petition alleged that: the defendant was engaged in the business of transporting and delivering parcels by motor trucks in and about the city of Akron, Ohio; Enrico Campanale was an employee of the said defendant, and, ''at the time of the incident herein complained of, [was] engaged in the furtherance of the defendant's business and acting in the course and within the scope of his employment. * * * on or about the 12th day of December, 1955, the plaintiff [Cy Richard King] was in charge of a truck for and on behalf of his employer, which truck was parked in the parking area of a place in Akron, Ohio, known as Eastgate Shopping Center, for the purpose of loading empty Coca-Cola bottles, and was peaceably engaged in the performance of his said employment, when the said Campanale demanded of him that he immediately remove said truck from said parking space so as to enable him to park the defendant's truck in said space and to permit him to make and complete delivery of parcels therefrom without delay in the course of the performance of his duties for the defendant, and when the plaintiff refused immediately to remove said truck in his charge from said parking space, said Campanale, in order to compel him to remove said truck in order to expedite the delivery of parcels for the defendant, maliciously assaulted and beat the plaintiff on and about the face and neck, then and there producing and causing the following injuries to the plaintiff * * * .''

Does this petition plead a case of vicarious liability against the master, Magaw, through the conduct of his servant Campanale?

In cases where a master gives orders to his servant, it is not difficult to understand why he should be held liable for the consequences of their commission, ''Nor is the case in substance different when he ratifies his servant's act. To stamp what is done for him with the seal of his approval is tacitly, but obviously, to accept the act as his own; and that is true no less where the ratification is implicit, than where it is expressly made manifest. No one, moreover, deems it necessary to take

objection to liability which is consequent upon a general negligence. I may knowingly employ a clearly incompetent person. I may consciously fail to provide proper means for the performance of the allotted work. I may fail to give my servant information which I know to be essential to the right completion of his task. I may fail to take adequate precautions against the commission of a tort in my presence. In cases such as these, where the master is directly involved, it is essential to any scheme of law that he should be held liable for such damage as his servant may cause." Laski, The Basis of Vicarious Liability, 26 Yale Law Journal, 105.

Directing attention now to situations in which the master is not directly involved, as appears to be the case now before us.

It is a principle now well established in this state that, in order to create a liability in a principal for the acts of a servant, in which the principal is not directly involved, the acts of the servant complained of must have been committed while the said servant was acting within the scope or course of his employment. It must be first shown that the servant was at the time engaged in serving his principal; second, that the act complained of was within the scope or course of the agent's employment; and if these requirements are shown to exist, it must also appear that the servant, in doing the act complained of, violated some duty that the defendant owed to the plaintiff at the time. *Higbee Co.* v. *Jackson,* 101 Ohio St., 75, at p. 79, 128 N. E., 61, 14 A. L. R., 131 (overruled on another point in *Union Gas & Electric Co.* v. *Crouch,* 123 Ohio St., 81, 174 N. E., 6, 74 A. L. R., 160).

The principle is further established in this state that, if the act of the servant which has occasioned the mischief is within the scope of the employment, the fact that it was maliciously done does not affect the question of the master's liability under a proper rule of damages. *Stranahan Bros. Catering Co.* v. *Coit,* 55 Ohio St., 398, at p. 413, 45 N. E., 634, 4 L. R. A. (N. S.), 506; *Nelson Business College Co.* v. *Lloyd,* 60 Ohio St., 448, 54 N. E., 471, 71 Am. St. Rep., 729, 46 L. R. A., 314.

From the general principles stated above, it is obvious that a master is not responsible for a wrongful act done by his

servant unless it is done in the scope or course of his employment.

In giving a meaning to the term "scope or course of employment," we hold that an act shall be deemed to have been done within the scope of employment if it is either (a) a wrongful act authorized by the master, or (b) a wrongful and unauthorized mode of doing some act authorized by the master. *Ciarmataro, Admr.,* v. *Adams,* 275 Mass., 521, 176 N. E., 610, 75 A. L. R., 1171, at p. 1176.

In applying the foregoing principles to the pleaded facts in the case before us, we are of the opinion that the petition states a cause of action. The servant of the defendant was performing his duty in the delivery of parcels for his master; it was necessary for him to secure a parking place to complete the delivery; the plaintiff occupied the space wanted by the defendant's servant to further his master's work; the defendant's servant, in overcoming the obstacles in his way in the performance of his master's work, pursued a "wrongful and unauthorized" method of fulfilling the duties of his employment.

If the servant acted recklessly or maliciously, he was still taking steps to deliver the goods within the general scope of his employment. From the pleading, it does not appear that he was seeking only to accomplish his own end, but, on the contrary, he was seeking to deliver the goods, and took wrongful steps in the execution of the service for which he was engaged.

There are many cases cited in digests and textbooks bearing upon the legal question before us. We refer to a few digests and texts: 26 Ohio Jurisprudence, Master and Servant, Section 622 *et seq.*; 35 American Jurisprudence, Master and Servant, Section 560 *et seq.*; 2 Harper and James, The Law of Torts, Section 26.9; Seavey, Studies in Agency (1949), Section 245, at p. 249.

The cases of *Little Miami Rd. Co.* v. *Wetmore,* 19 Ohio St., 110, and *Cleveland Ry. Co.* v. *Huntington,* 119 Ohio St., 518, 164 N. E., 752, are distinguished by the facts.

The judgment will be reversed and the cause remanded.

*Judgment reversed and cause remanded.*

HUNSICKER, P. J., and STEVENS, J., concur.