WIEBOLD STUDIO, INC., APPELLANT, *v.* OLD WORLD RESTORATIONS, INC. ET AL., APPELLEES.

(No. C-840485—Decided April 17, 1985.)

*Gates T. Richards,* for appellant.

*Carroll, Bunke, Henkel, Haverkamp & Smith* and *Thomas R. Smith,* for appellees.

BLACK, J. Both sides of this lawsuit obtained favorable verdicts on their respective claims, and each of them moved that the judgment against it be set aside notwithstanding the verdict, under Civ. R. 50(B). Only the judgment favorable to plaintiff was set aside, defendants' judgment remaining intact. Plaintiff appeals.

Plaintiff, Wiebold Studio, Inc. (Wiebold Studio), brought suit against defendants, Old World Restorations, Inc. (Old World) and Douglas A. Eisele, individually and as president of Old World (Eisele), seeking damages for wrongful use of Wiebold Studio's trade secrets. Defendants counterclaimed, asking for damages from Wiebold Studio for deceptive trade practices, unfair competition and harassment. Neither party sought injunctive relief. At the conclusion of the trial, the jury rendered one verdict in favor of Wiebold Studio for compensatory damages of $52,000, and another verdict in favor of Old World and Eisele for compensatory damages of $5,000. No punitive damages were awarded. On cross-motions for judgment notwithstanding the verdict, Wiebold Studio's favorable judgment was set aside but judgment was entered against it in favor of defendants on their counterclaim. Specifically, the court held (1) that Wiebold Studio failed to prove both the existence of any trade secrets utilized by Old World and Eisele and the existence of any damages, and (2) that the wrongful acts of Wiebold Studio's president were attributable to that corporation. In its appeal, Wiebold Studio presents four assignments of error, none of which have merit. A summary of the Ohio law of trade secrets will assist in explaining our affirmance of the judgment below.

## I

In *Kewanee Oil Co.* v. *Bicron Corp.* (1974), 416 U.S. 470 [69 O.O.2d 235] (holding that Ohio's law of trade secrets is not preempted by the federal patent statutes), the United States Supreme Court summarized Ohio's law of trade secrets, noting that Ohio has adopted the definition of "trade secret" found in Restatement of the Law, Torts (1939), Section 757, Comment *b*, which reads in pertinent part:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. * * * A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. It may, however, relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates or other concessions in a price list or catalogue, or a list of specialized

customers, or a method of bookkeeping or other office management."

The formulas, patterns, devices, or compilations of information cannot qualify as trade secrets if they are of common knowledge or use in the trade. They must be "secret" in the sense that they are known only to the employer and his employees, are unique in the trade, give the employer a competitive advantage, and are protected by substantial security measures.[1]

The underlying principles of trade secret law, as noted by Justice Oliver W. Holmes, are not those of property law but the equitable principles of good faith applicable to confidential relationships. The employer who has discovered or developed trade secrets is protected against unauthorized disclosure or use, not because he has a property interest in the trade secrets, but because the trade secrets were made known to the employee in a confidential relationship. *E. I. Dupont de Nemours Powder Co.* v. *Masland* (1917), 244 U.S. 100, 102; *Curry* v. *Marquart* (1937), 133 Ohio St. 77, 79 [10 O.O. 93]; Restatement of the Law, Torts, *supra*.

A former employee can use to his own advantage all the skills and knowledge of common use in the trade that he acquires during his employment. A person who enters employment as an apprentice and leaves it as a master cannot be enjoined from using his enhanced skills and knowledge in future employment. He can be enjoined only from developing or using the unique and advantageous materials and processes revealed to him in a confidential employer-employee relationship under substantial measures of security.

Underlying most every case in which a former employee is accused of the unauthorized disclosure or use of trade secrets is the matter of balancing or reconciling "the conflicting rights of an employer to enjoy the use of secret processes and devices which were developed through his own initiative and investment and the right of [former] employees to earn a livelihood by utilizing their personal skill, knowledge and experience." *GTI Corp.* v. *Calhoon* (S.D. Ohio 1969), 309 F. Supp. 762, 768 [53 O.O. 2d 74]; Annotation (1970), 30 A.L.R.3d 631, 636, Section 2(a). The balancing of these two interests may be facilitated by distinguishing between knowledge and skill that is general in the trade as a whole, on the one hand, and, on the other, that "secret" knowledge which is acquired particularly and specifically from the employer.

## II

The business of Wiebold Studio, a family undertaking begun in 1945, is the conservation and restoration of objects of art including antiques, paintings, jewelry, ceramics, and ivory miniatures. It is located in Terrace Park, Hamilton County, and claims to have a national reputation. Eisele was first employed on a part-time basis in February 1976 when he was a local high school student, and then on a full-time basis after his graduation in June 1977 until he resigned in November 1977, to join his brother in an unrelated business in St. Louis, Missouri. He returned to Terrace

---

[1] See *W. R. Grace & Co.* v. *Hargadine* (C.A. 6, 1968), 392 F.2d 9 [45 O.O.2d 356]; *GTI Corp.* v. *Calhoon* (S.D. Ohio 1969), 309 F. Supp. 762 [53 O.O.2d 74]; *Valco Cincinnati, Inc.* v. *N & D Machining Service, Inc.* (Dec. 19, 1984), Hamilton App. No. C-830850, unreported, motion to certify record granted (May 15, 1985), No. 85-280; *Pyromatics, Inc.* v. *Petruziello* (1983), 7 Ohio App. 3d 131; *B. F. Goodrich Co.* v. *Wohlgemuth* (1963), 117 Ohio App. 493 [24 O.O.2d 290]; *National Tube Co.* v. *Eastern Tube Co.* (1902), 3 Ohio C.C. (N.S.) 459, affirmed (1903), 69 Ohio St. 560; Annotation (1970), 30 A.L.R. 3d 631.

Park about seven months later and established Old World in the vicinity as a direct competitor to Wiebold Studio. Eisele had not signed an agreement not to compete with Wiebold Studio.

This competition was a source of intense aggravation to Bill Wiebold, the president of Wiebold Studio, its "head conservator," and the son of its founder. Bill Wiebold engaged in a course of conduct (harassing telephone calls, sending Old World articles to repair with fictitious return addresses, deceptive advertising, etc.), that was plainly wrongful, unfair and injurious. His defense against defendants' counterclaim for the resulting damage was that this conduct went beyond the scope of his employment and was not authorized or ratified by the corporation.

In support of the claim of wrongful use of trade secrets, Wiebold Studio presented evidence that Eisele wrongfully obtained from its office records the name of a supplier of a unique product Wiebold Studio used for painting or decorating ceramics. However, Eisele never purchased or used that product; he simply inquired about its availability. The evidence also demonstrated that Eisele utilized two other products and a tool used by Wiebold Studio (a ceramic glaze, Ceramit; a filler putty, Duratite; and a jig for holding broken articles in place during restoration). We find nothing in the evidence, however, to establish that the use of these items was so unique and competitively advantageous as to qualify them as trade secrets. Wiebold Studio, in fact, stopped using Ceramit because of its unfavorable characteristics. While Bill Wiebold clearly did not reveal to the general public the processes or materials employed by Wiebold Studio for restoration and conservation, the evidence does not demonstrate that these processes and materials were unique in the trade. In fact, Eisele's evidence was that the processes and material he used in Old World's business were either generally known in the trade or obtainable from available publications.

Plaintiff's evidence about its damage was limited to Bill Wiebold's opinion that the value of Wiebold Studio's "knowledge which would represent [Wiebold Studio's] scientific, technical information, design, processes, procedures, formulas or improvements or any of the business plans * * * maintained for Wiebold Studio" was $50,000, and that the value of Eisele's year and one-half of training in the trade was $10,000.

### III

Wiebold Studio's first assignment alleges error in granting the motion made by defendants for judgment notwithstanding the verdict. We review this assignment of error with the same standard of review used in reviewing a directed verdict under Civ. R. 50. The evidence must be construed most strongly in favor of Wiebold Studio (the party against whom the motion was made) without weighing the evidence or the credibility of witnesses, and we must then determine whether reasonable minds could come only to the conclusion that Wiebold Studio had failed as a matter of law to prove its entitlement to relief. The question is not one of fact but one of law, requiring a review of the evidence but not that sort of "weighing" or evaluation of evidence made by a trier of the facts in order to resolve factual issues. *Posin* v. *A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St. 2d 271, 276-277 [74 O.O.2d 427]; *American States Ins. Co.* v. *Robertshaw Controls Co.* (July 18, 1984), Hamilton App. No. C-830590, unreported.

The trial court did not err in granting defendants' motion for judgment notwithstanding the verdict. The trial court found failure of proof of both trade secrets and damages. We agree, for reasons made obvious in our review of

the evidence set forth in Part II in the light of the law set forth in Part I. Eisele undoubtedly acquired knowledge and skill as a young employee of Wiebold Studio, but the record is devoid of any evidence that Wiebold Studio had any trade secrets.[2]

Further, the record is devoid of any proof that Wiebold Studio was damaged in any respect entitling that organization to relief.[3] An employer has no common-law right to recover either (1) the value of the employer's processes and materials used in the trade when there is no evidence that those processes and materials were in fact trade secrets misappropriated by the former employee, or (2) the value of training as an employee hired on an "at will" basis. For a discussion of the measure of damages in a trade secret violation, see Part V below.

IV

In the second assignment of error, Wiebold Studio asserts that error was committed when the court refused to grant its motion for judgment notwithstanding the verdict and to set aside the judgment in favor of the defendants. Wiebold Studio implicitly concedes that Bill Wiebold's conduct was wrongful and injurious, because it was designed to distract Old World employees from their tasks, to disparage their product in the eyes of their customers, and to lead the public to believe that Old World had gone out of business. Wiebold Studio contends that this willful and malicious conduct was beyond the scope of Bill Wiebold's employment as a matter of law. We are not persuaded.

Bill Wiebold may have acted excessively, but he did what he did in order to reduce the impact on his business of the competition created by Old World and to protect Wiebold's position in the trade. He may not have owned stock in the family corporation, but he was its president and head conservator. His actions were not in pursuance of a frolic of his own.

Since 1896, the Ohio law has been that the willful or malicious character of an employee's act does not, as a matter of law, remove it from the scope of employment. *Stranahan Brothers Catering Co.* v. *Coit* (1896), 55 Ohio St. 398; *King* v. *Magaw* (1957), 104 Ohio App. 469 [5 O.O.2d 162], paragraphs two and three of the syllabus. See, also, *London & Lancashire Indemnity Co. of America* v. *Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136; *Citizens Gas & Electric Co.* v. *Black* (1916), 95 Ohio St. 42; *Nelson Business College Co.* v. *Lloyd* (1899), 60 Ohio St. 448.

When an employee diverts from the straight and narrow performance of his task, the diversion is not an abandonment of his responsibility and service to his employer unless his act is so divergent that its very character severs the relationship of employer and employee. *Amstutz* v. *Prudential Ins. Co. of America* (1940), 136 Ohio St. 404 [16 O.O. 572]; *Stranahan Bros. Catering Co.* v. *Coit, supra,* at 410; *Finley* v. *Schuett* (1982), 8 Ohio App. 3d 38.

The evidence in the instant case was

---

[2] Examples of proof sufficient to establish the existence of trade secrets will be found in *Valco Cincinnati, Inc.* v. *N & D Machining Service, Inc., supra,* and *Pyromatics, Inc.* v. *Petruziello, supra.*

[3] As stated in Part V, *infra,* the true measure of damages for violation of trade secret law is not the market or replacement value of the trade secrets, which standards are used in property law, but the profits lost by the business owner or the profits gained by the former employee from the misappropriation of the trade secrets. Our affirmance of the judgment below shall not be taken as approval of the measure of damages entertained by the trial court.

sufficient to prove to reasonable minds by a preponderance that Bill Wiebold was acting within the scope of his employment, albeit wrongfully and maliciously. The court made no error in presenting the issue to the jury, because what is the "scope of employment" and whether particular acts fall within it are, generally, issues of fact for determination by the trier of fact. *Tarlecka* v. *Morgan* (1932), 125 Ohio St. 319; *Nelson Business College Co.* v. *Lloyd, supra; King* v. *Magaw, supra.*

## V

The court denied Wiebold Studio's request for prejudgment interest, and in its third assignment of error, plaintiff contends that this was error. We hold it was not.

Plaintiff grounds its claim to prejudgment interest, not on R.C. 1343.03 (providing for interest when the rate is not stipulated), but on the rule that in an action for conversion of property, the true measure of damages is the value of the property at the time of the taking or conversion. See *Booth* v. *Cincinnati Finance Co.* (1923), 19 Ohio App. 130, affirmed (1924), 111 Ohio St. 361; *Adkins* v. *Landis* (Dec. 3, 1980), Butler App. No. CA79-11-0105, unreported; *Paul* v. *First Natl. Bank of Cincinnati* (1976), 52 Ohio Misc. 77, 88-89 [6 O.O.3d 207]. Wiebold Studio maintains that the defendants converted trade secrets to their own purposes prior to judgment, and that it is therefore entitled to prejudgment interest beginning the day Eisele resigned from Wiebold Studio's employment.

The claim has no merit for two reasons. First, the evidence fails to establish the existence of any trade secrets or the violation by defendants of a confidential relationship. Second, the law of trade secrets, as noted in Part I, is not within the law of property; it is derived from the equitable enforcement of a duty of good faith arising out of a confidential relationship. The injured party's interest is in an intangible right, and most intangible rights cannot be "converted." See *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224 [1 O.O.3d 129], reversed on other grounds (1977), 433 U.S. 562 [5 O.O.3d 215]; Prosser, Law of Torts (4 Ed. 1971) 81-83, Section 15. Further, the proper measures of damages for misappropriation of trade secrets, assuming the parties themselves have not mutually placed a value on them as by a negotiated or attempted royalty agreement, are either the award to plaintiff of profits lost by the misappropriation or an accounting by defendant of profits gained by the misappropriation. Annotation (1982), 11 A.L.R.4th 12. The amount of any recovery is necessarily unliquidated until the judgment and, traditionally, prejudgment interest cannot be awarded in the absence of any extraordinary circumstances. We hold that the court in the instant case properly denied Wiebold Studio's claim for prejudgment interest.

## VI

In the fourth and last assignment of error, Wiebold Studio contends that the rejection of three written requests for jury instructions was erroneous. Assuming without deciding that this plaintiff can raise the issue of jury instructions (in other words, that plaintiff has standing because although it received a favorable verdict, that was set aside under Civ. R. 50[B]), we find no reversible error in the trial court's rulings on jury instructions.

The first rejected instruction was about punitive damages. Even though plaintiff had not demanded punitive damages in its complaint, recovery may include punitive damages if the evidence supports it. *Steinbeck* v. *Phillip Stenger Sons, Inc.* (1975), 46 Ohio App. 2d 22 [75 O.O.2d 25]. The evidence, however, not only failed to prove malicious and willful

252

conduct by Old World or Eisele or both, but it also failed to prove the existence or misappropriation of trade secrets. The court did not err when it rejected this instruction.

The second rejected instruction was taken from the definition of "trade secret" that is found in Restatement of the Law, Torts, *supra,* a definition that was stated by the United States Supreme Court, in *Kewanee Oil Co.* v. *Bicron Corp., supra,* to be the basis of the Ohio law of trade secrets. The court erred in rejecting this instruction because it was a proper and relevant statement of the law. The trial court relied on R.C. 1333.51 as a complete statement of the Ohio law of trade secrets, and that statute covers only the theft, misuse or misappropriation of tangible items representing trade secrets. We do not believe it is a complete statement of the law of trade secrets. See Part I, *supra.* R.C. 1333.81 appears to be a better statement. Both statutes, however, describe criminal offenses, not the civil rights and duties with respect to trade secrets, which are derived from the common law. The error, however, was not reversible because the evidence failed to establish the existence or misappropriation of any trade secrets.

The third and last rejected instruction was a verbatim recitation of R.C. 1333.81, which approximates an accurate statement of the common-law duty of an employee to keep a confidentiality received in the course of employment. It was error to reject it, but the error was not prejudicial, the existence or misappropriation of any trade secrets not having been established.

We affirm.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.