OPINION
{¶ 1} Plaintiff-appellant, Engineering Excellence, Inc., appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Dave Meola. For the following reasons, we affirm in part and reverse in part and remand.
{¶ 2} Appellant's business includes the servicing, installing and maintaining of commercial and industrial heating, ventilation and air conditioning ("HVAC") systems. On June 10, 1994, appellant hired appellee as an HVAC service technician. During appellee's employment with appellant, he serviced a number of HVAC systems in Columbus, Ohio.
{¶ 3} On the first day of appellee's employment, appellee signed an "Employment, Confidentiality and Non-Competition Agreement" (hereinafter "employment agreement"). This employment agreement prohibited appellee from disclosing appellant's confidential information "to any third party or use such information for the benefit of any third party." Additionally, the employment agreement contained a provision entitled "Agreement Not to Compete," in which appellee agreed that, during his employment and for a period of two years after the termination of his employment, he would not "either directly or indirectly * * * engage in any business which is competitive with the business of Company within a fifty (50) mile radius of Cincinnati, Ohio." The employment agreement also contained a provision entitled "Non-Solicitation," which stated that:
{¶ 4} "During the term of Employee's employment with Company and for a period of two (2) years following termination of Employee's employment with Company for any reason, Employee agrees that Employee will not, either directly or indirectly, solicit or accept business of the type then being conducted by Company from, or provide sales or service of heating, ventilating, and/or air conditioning equipment to any person, partnership, corporation, or other entity who is then a customer of Company or who was a customer of Company during the twenty-four (24) month period immediately prior thereto. Employee further agrees that, during the term of Employee's employment with Company and for a period of two (2) years following the termination of Employee's employment with Company for any reason, Employee will not, directly or indirectly, attempt to cause any person, partnership, corporation, or other entity who is then a customer of Company or who was customer of Company during the twenty-four (24) month period immediately prior thereto to divert such customer's business away from Company to any other person or entity * * *."
{¶ 5} Appellee quit his employment with appellant on February 13, 2001, and subsequently began working as an HVAC service technician for Bruner Corporation ("Bruner"), one of appellant's direct competitors in the Columbus market. As an employee for Bruner, appellee has serviced the HVAC systems of four of appellant's former customers, including those systems located at the Cascade Complex, Paradigm Properties, the Forum at Knightsbridge, and the Forum at Knightsbridge II — all of which are located in the Columbus area. Appellee also serviced each of these HVAC systems while employed by appellant.
{¶ 6} Although the four former customers transferred their business to Bruner around the time appellee was hired by Bruner, representatives of each of the former customers testified that appellee had not solicited their business. Further, appellee testified that he never divulged the identity of appellant's customers to Bruner employees.
{¶ 7} On July 13, 2001, appellant filed suit against appellee, alleging two causes of action: (1) appellee breached the employment agreement; and (2) appellee misappropriated appellant's trade secrets in violation of R.C. 1333.61, et seq. Appellant also requested the trial court enjoin appellee from disclosing confidential information and trade secrets, and from soliciting or servicing the HVAC systems of appellant's present or former customers for two years. After a hearing, the trial court determined that appellant failed to establish that it was entitled to a temporary restraining order and, therefore, denied the same.
{¶ 8} On July 26, 2001, appellee filed a motion for summary judgment, arguing that the employment agreement was unenforceable, and that appellant could not establish that appellee misappropriated any of appellant's trade secrets. Appellant responded with a motion for partial summary judgment, asserting that there were no questions of material fact as to its claim that appellee had breached the employment agreement and, thus, that it was entitled to judgment as a matter of law on that claim. Finding merit in appellee's arguments, the trial court granted his motion for summary judgment and denied appellant's motion for partial summary judgment.
{¶ 9} On appeal, appellant assigns the following error:
{¶ 10} "The Trial Court Erred To The Prejudice Of The Plaintiff-Appellant As A Matter Of Law In Failing to Enforce the Restrictive Covenant Entered into by Defendant-Appellee and thereby Denying Plaintiff-Appellant's Motion For Temporary Restraining Order And Preliminary Injunction And Motion for Partial Summary Judgment And In Granting Defendant-Appellee's Motion for Summary Judgment And Motion To Reconsider Court's Decision Allowing Count Two Of The Complaint To Remain."
{¶ 11} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
{¶ 12} When a party seeks summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. After the moving party has satisfied this initial burden, the non-moving party has a reciprocal duty to set forth specific facts showing that there is a genuine issue of material fact and, if the non-moving party does not so respond, summary judgment should be entered for the moving party. Id.
{¶ 13} We will first address appellant's claim that appellee misappropriated appellant's trade secrets in violation of R.C. 1333.61, et seq. In pertinent part, R.C. 1333.61 reads:
{¶ 14} "(B) `Misappropriation' means any of the following:
"* * *
{¶ 15} "(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
"* * *
{¶ 16} "(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret * * * was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use * * *.
"* * *
{¶ 17} "(D) `Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
{¶ 18} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
{¶ 19} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
{¶ 20} A party claiming trade secret status must identify and demonstrate that the information at issue is included in the categories of protected information under R.C. 1333.61. State ex rel. Besser v. Ohio State Univ. (2000), 89 Ohio St.3d 396, 400. Because there is no particular presumption that any information imparted to or acquired by an employee is a trade secret, the party asserting that the information is a trade secret must demonstrate that active steps were taken to maintain the information's secrecy. Id.; Biomedical Innovations, Inc. v. McLaughlin (1995), 103 Ohio App.3d 122, 127-128.
{¶ 21} When determining whether certain information is a trade secret, a court must balance the conflicting right of an employer to protect secret processes and devices that were developed through its own initiative with the right of employees to earn a livelihood by utilizing their personal skill, knowledge and expertise. Buckeye Business Forms, Inc. v. Sutton (Dec. 14, 1999), Franklin App. No. 99AP-395 (citing Valco Cincinnati, Inc. v. N D Machining Service, Inc. [1986],24 Ohio St.3d 41, 46). An employee can be enjoined from using unique information revealed to him in a confidential employer-employee relationship under substantial measures of security, but not from using knowledge and skill that is general in the trade as a whole. Id. "A person who enters employment as an apprentice and leaves it as a master cannot be enjoined from using his enhanced skills and knowledge in future employment." Wiebold Studio, Inc. v. Old World Restorations, Inc. (1985), 19 Ohio App.3d 246, 248.
{¶ 22} Here, appellant claims that appellee misappropriated knowledge regarding how appellant services its accounts, its customers' equipment and equipment needs, and the identity of appellant's customers. In his deposition, appellee admitted that he knows the identity of the customers he worked for while in appellant's employ. Appellee also admitted that he knows those customers' equipment and equipment needs, and that he uses that knowledge while working for Bruner, his new employer. Appellee, however, argues that these admissions do not establish that he misappropriated appellant's trade secrets. We agree.
{¶ 23} First, information regarding customers' equipment and equipment needs does not fall within the statutory definition of "trade secret." Given that any trained HVAC service technician has knowledge regarding HVAC systems and their needs, appellant cannot establish that this information is unique to appellant. Indeed, appellee testified that he works from diagrams posted on the HVAC equipment itself. This knowledge, of course, would be generally known to any service technician who was hired to service the equipment. Further, appellant cannot guard the secrecy of information regarding its customers' equipment and equipment needs because the equipment at issue belongs to the customers.
{¶ 24} Second, even if we assume that information regarding how appellant services its accounts and the identity of appellant's customers are "trade secrets," appellant fails to present any evidence showing that appellee "misappropriated" this information. Although appellee testified that he had knowledge of how appellant serviced its accounts, he never testified that he used that knowledge while working for Bruner. Additionally, appellee testified he neither divulged the identity of appellant's customers to Bruner, nor did he solicit the customers' business. Not only does appellant fail to present any evidence to rebut this testimony, appellant's own vice-president, Edward Besack, testified that he was not aware of any confidential information that appellee had shared with Bruner.
{¶ 25} Appellant, however, argues that there is circumstantial evidence that appellee used his knowledge of the identity of appellant's customers to solicit those customers. As appellant notes, the evidence establishes that two of the four former customers at issue, the Cascade Complex and Paradigm Properties, transferred their business to Bruner shortly after appellee became an employee of Bruner. To support its argument, appellant also points to testimony from appellee in which he admitted that a day before he resigned from appellant's employ, he told the property managers of the Cascade Complex, both long-time acquaintances of appellee, that he was quitting and going to work for Bruner. Based upon this evidence, appellant argues that a trier of fact could infer that appellee solicited these customers' business. We disagree.
{¶ 26} Appellee has presented testimony that directly refutes the "circumstantial evidence" that appellant relies upon. In affidavit testimony, the representatives of both Paradigm Properties and the Cascade Complex affirmatively testified that appellee did not solicit their business. A representative of Paradigm Properties testified that her decision to transfer her business to Bruner stemmed not from solicitation by appellee, but from her dissatisfaction with appellant's billing practices and customer relations. Further, in a letter from the Paradigm Properties representative to appellant, the Paradigm Properties representative attempted to cancel appellant's services as of January 15, 2001, approximately one month before appellee left appellant's employ. Similarly, two representatives of the property manager for the Cascade Complex testified that they chose to transfer their business to Bruner because they were dissatisfied with appellant's services. Given this direct testimony, appellant's supposition that appellee solicited its former customers' business does not create an issue of fact. See Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp. (1986),475 U.S. 574, 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").
{¶ 27} Accordingly, the trial court appropriately granted summary judgment in favor of appellee on appellant's misappropriation of trade secrets claim.
{¶ 28} We next address appellant's claim that appellee breached the employment agreement. Appellant alleges that appellee breached the agreement in three ways: (1) appellee disclosed confidential information; (2) appellee solicited appellant's customers; and (3) appellee serviced the HVAC units of appellant's customers.
{¶ 29} The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A court will only consider extrinsic evidence in an effort to give effect to the parties' intentions if the language of a contract is ambiguous. Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 638.
{¶ 30} Because they are related, we will address jointly appellant's allegations that appellee breached the employment agreement through disclosing confidential information and soliciting appellant's customers. Appellant correctly asserts that confidential information does not have to rise to the level of a trade secret in order to be the subject of a valid non-disclosure agreement between employer and employee. Interstate Serv. Ins. Agency, Inc. v. McIntire (Jan. 9, 1991), Hamilton App. No. C-890346. In the contract at issue here, "confidential information" is defined as "any information, knowledge, or data with respect to Company's business, services, trade secrets, technologies, systems, customers, sales, marketing, and service methods." The word "confidential" denotes information that is "known only to a limited few; not publicly disseminated." Procter Gamble Co. v. Stoneham (2000), 140 Ohio App.3d 260, 272 (quoting Webster's Third New International Dictionary, Unabridged [1981], 476). Thus, any "information, knowledge, data" regarding appellant's business that is not publicly disseminated is protected pursuant to the employment agreement.
{¶ 31} As it did in asserting its misappropriation of trade secrets claim, appellant claims that appellee is liable for breach of contract because he used confidential information regarding the identity of appellant's customers, the customers' equipment and equipment needs, and how appellant serviced accounts. As we discussed above, there is no evidence that appellee disclosed or used information regarding how appellant services its accounts in his new job. Thus, appellee correctly asserts that appellant cannot establish a breach of the employment agreement on that ground. Further, because neither knowledge of the customers' equipment nor their equipment needs constitutes information known only by appellant, these allegations cannot establish a breach of contract claim for disclosure of confidential information.
{¶ 32} However, appellant argues that information regarding the identity of its customers is protected because it is not publicly disseminated, and that appellee has breached the "Confidentiality" and "Non-Solicitation" provisions of the employment agreement because he used that knowledge to "indirectly" solicit customers or cause customers to transfer their business. As we discussed above, appellee testified that he neither solicited appellant's customers, nor disclosed appellant's customers' identities to his new employer. Appellant does not present any evidence to rebut this testimony. Appellant, however, points to the following statement from both representatives of the property manager of the Cascade Complex as evidence that appellee had an "indirect" effect that caused the representatives to transfer their business: "Dave Meola had no direct influence on the decision to switch service companies, nor did he solicit the business from [the property manager] or otherwise divert this location away from [appellant]." Appellant argues that this testimony that appellee had no "direct influence" on the former customer's decision to transfer its business to Bruner means that appellee must have had an indirect influence on the customers' decision to transfer. Appellant reaches this conclusion by comparing the Cascade Complex's representatives' affidavits to the other former customers' affidavits, which state that appellant had "no influence whatsoever" on their decision to transfer their business.
{¶ 33} We decline to accept appellant's argument. Pursuant to the summary judgment standard set forth in Dresher, supra, a non-moving party has the burden to come forth with facts, not supposition, once a moving party identifies those portions of the record that demonstrate the absence of a genuine issue of fact. As we stated above, appellee has presented affirmative testimony from the representatives of the Cascade Complex that they decided not to renew their contract with appellant because they were dissatisfied with appellant's services. Given this unrebutted testimony, we cannot conclude that there are genuine issues of material fact to be resolved, particularly when the only contrary "evidence" is appellant's supposition.
{¶ 34} Accordingly, we conclude that the record is devoid of any evidence that appellee solicited appellant's customers or disclosed confidential information and, thus, appellee did not breach the employment agreement in these two ways as alleged by appellant.
{¶ 35} Appellant also claims that appellee breached the employment agreement by servicing the HVAC systems of four of appellants' former customers. In relevant part, that provision reads:
{¶ 36} "During the term of Employee's employment with Company and for a period of two (2) years following termination of Employee's employment with Company for any reason, Employee agrees that Employee will not, either directly or indirectly, solicit or accept business of the type then being conducted by Company from, or provide * * * service of heating, ventilating, and/or air conditioning equipment to any person, partnership, corporation, or other entity who is then a customer of Company or who was a customer of Company during the twenty-four (24) month period immediately prior thereto. * * *"
{¶ 37} At the outset, it should be noted that this provision is part of a broader paragraph entitled "Non-solicitation." Yet, the provision seems to include both non-solicitation and non-competition concepts — even though the employment agreement has a separate non-competition paragraph.
{¶ 38} Appellant asserts that this provision prevents appellee from providing HVAC services to any entity who was a customer when appellee left his employment with appellant, and any entity who was appellant's customer for the two years before appellee left his employment with appellant. Thus, appellant concludes that appellee could not service the four former customers at issue here.
{¶ 39} However, if this contractual provision is interpreted literally, it would also prohibit appellee from providing HVAC services to any of appellant's customers during the term of his employment with appellant, as well as for two years after his employment ends. This literal interpretation would seem to be non-sensical because it would prohibit appellee from doing the very job he was hired to perform when he worked for appellant. The provision may have been intended to prohibit appellee from "moonlighting" (servicing appellant's existing or past customers after hours on his own) during the time he was employed by appellant. However, because the meaning of the provision is unclear — particularly given the title of the paragraph ("Non-solicitation") and the anomalous result of a literal interpretation, we find the provision facially ambiguous.
{¶ 40} When a court determines that a contract is ambiguous, the meaning of the ambiguous provision becomes a question of fact. Ohio Historical Society v. General Maintenance Engineering Co. (1989),65 Ohio App.3d 139, 146. Thus, a trier of fact must examine the employment agreement language and extrinsic evidence in order to determine the parties' intentions. Shifrin, supra. The necessity of such a factual examination of the parties' intent precludes summary judgment as to whether or not appellee breached the "Non-solicitation" provision by servicing appellant's former customers' as part of his duties for his new employer.
{¶ 41} Finally, appellant asserts that the trial court erred by denying it a temporary restraining order preventing appellee from servicing the HVAC units of appellant's former customers. An appellate court will not disturb a trial court's decision to deny or grant a temporary restraining order absent an abuse of discretion. Brentlinger Enterprises v. Curran (2001), 141 Ohio App.3d 640, 646. An injunction is an extraordinary remedy in equity, and is only available where there is no adequate remedy at law. Id. In order to be granted an injunction enforcing a non-competition agreement, the movant must demonstrate that it is likely to suffer irreparable harm as a result of the employee's breach of the agreement. Id.
{¶ 42} Here, we conclude that the trial court acted within its discretion when denying appellant a temporary restraining order. As we explained above, appellant failed to establish that appellee breached the employment agreement by soliciting customers or disclosing confidential information. Appellant, however, argues that its relationship with its four former customers is being irreparably harmed by the ongoing service appellee supplies for those customers' HVAC units. Even assuming that appellee has breached the employment agreement by merely servicing appellant's four former customers, such action by appellee could not cause irreparable harm to appellant. Any arguably irreparable harm to appellant's relationship with its former customers occurred when the customers terminated their service agreements with appellant, not by the service appellee currently provides to the former customers' HVAC units. As appellee did not solicit the four former customers and he does not maintain his relationship with those customers through use of appellant's confidential information, appellant is not being irreparably harmed by appellee's actions.
{¶ 43} For the foregoing reasons, appellant's assignment of error is sustained in part as it pertains to appellant's claim that appellee breached the "Non-solicitation" provision by servicing the HVAC units of appellant's former customers. However, the assignment of error is overruled as it pertains to the denial of the temporary restraining order, appellant's claim that appellee misappropriated trade secrets, and appellant's claim that appellee breached the employment agreement by disclosing confidential information and soliciting former customers. The judgment of the Franklin County Court of Common Pleas is reversed to the extent it granted summary judgment for appellee on appellant's claim for breach of the employment agreement by servicing the HVAC units of appellant's former customers and otherwise is affirmed.
Judgment affirmed in part, reversed in part, and remanded.
TYACK, P.J., and BRYANT, J., concur.