OPINION
{¶ 1} Cindy L. Grubb and Mildred L. Brown appeal from the trial court's entry of summar judgment in favor of appellee Security National Bank Trust Company ("SNB") on their respondea *Page 2 
their respondeat superior and negligent hiring and retention claims against the bank.[1]
 {¶ 2} The appellants advance two assignments of error on appeal. First, they contend th trial court erred in entering summary judgment on the respondeat superior claim. Second, they asser that the trial court erred in entering summary judgment on the negligent hiring and retention claim The appellants argue that genuine issues of material fact should preclude the entry of summar judgment on either claim.
 {¶ 3} The present appeal stems from an incident involving John Cole, an SNB branc manager, Cindy Grubb, and her mother, Mildred Brown. On August 18, 1997, Grubb and Brow entered the Medway branch office and spoke with Cole about a checking account dispute. Whil meeting with Grubb and Brown in his office, Cole was unable to resolve the issue to their satisfaction At one point, Grubb suggested that Cole had falsified bank records to deceive her. Cole responde by raising his voice and telling Grubb and Brown to "get out." Brown refused to leave, however, s Cole arose from his desk, took her by the arm, and attempted to escort her out of the bank. As he di so, Grubb hit or shoved him, causing him to fall into his desk. Grubb and Brown then exited the offic and went into the lobby with Cole following them. As the two women walked across the lobby, Col kicked Grubb from behind, hitting her in the crotch or thigh area. Grubb turned toward Cole t retaliate, and they briefly exchanged punches. Whether any of the punches hit their mark is disputed In any event, Grubb and Brown moved toward the door and left the building. SNB fired Cole shortl after the incident. *Page 3 
 {¶ 4} On August 18, 1998, the appellants filed a complaint against Cole and SNB. Th complaint alleged that Grubb had sustained injuries when Cole kicked and hit her. It also alleged tha Brown had sustained injuries when Cole grabbed her arm to escort her out of the bank. Th complaint alleged that SNB was responsible for Cole's actions on the basis of respondeat superior. also alleged that the bank was liable for negligent hiring and retention of Cole.[2] On January 24, 2006 the trial court sustained a motion for summary judgment filed by SNB. In so doing, the trial cour found no negligent hiring or retention liability, as a matter of law, because "SNB could not hav foreseen Cole's actions[.]" With regard to the respondeat superior claims, the trial court reasoned a follows:
 {¶ 5} "According to the record here, Cole's duties included providing customer service representing SNB, and overseeing the Medway branch. Grubb had a checking account with SNB an met with Cole to discuss some issue with it. Thus, the meeting between Cole, Grubb, and Brow arose out of a customer service situation at the Medway branch in which Cole was acting as SNB' representative. Nothing in the record suggests that this meeting involved anything other than SN business for which Cole was employed to handle. Therefore, the initial encounter between Cole an the Plaintiffs took place within the scope of Cole's employment.
 {¶ 6} "However, the record does not support a determination that the physical aspects of th encounter were reasonably connected to any bank business. Rather, Cole and the Plaintiffs ha turned the situation personal by yelling at each other and striking one another. These actions mark clear departure from the scope of Cole's employment. By yelling at the Plaintiffs to get out of hi *Page 4 
yelling at the Plaintiffs to get out of his office and running after and kicking Grubb, reasonable mind can only conclude that Cole was acting to `vent his own malevolence' against Grubb and Brown Consequently, SNB cannot be held responsible for Cole's self-serving act."
 {¶ 7} The trial court entered final judgment for SNB on February 23, 2006, with Civ.R. 54(B certification that there "is no just reason for delay." This timely appeal followed.
 {¶ 8} In their first assignment of error, Grubb and Brown contend the trial court erred i entering summary judgment on their respondeat superior claim because reasonable minds could fin that Cole was acting in the scope of his employment when he caused their alleged injuries. I support, they note the existence of evidence that Cole's responsibilities as branch manager include dealing with customer complaints and escorting customers off of the property, if necessary. As result, the appellants argue that "even if Cole's actions were intentional, wrongful and not i compliance with company policy, handling customer complaints and escorting individuals from th bank were actions calculated to facilitate or promote bank business." In response, SNB contend Cole's responsibilities did not include physically removing customers from the bank. SNB also argue that Cole's acts of "physically accosting" Brown and chasing Grubb out of his office and kicking he from behind were clear departures from his responsibilities and did not in any way facilitate o promote bank business.
 {¶ 9} Upon review, we find a genuine issue of material fact as to whether Cole's actions wer within the scope of his employment and, therefore, whether SNB may be held liable unde respondeat superior. "It is well-established that in order for an employer to be liable under th doctrine of respondeat superior, the tort of the employee must be committed within the scope o employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must b *Page 5 
giving rise to the tort must be `calculated to facilitate or promote the business for which the servan was employed[.]"' Byrd v. Faber
(1991), 57 Ohio St.3d 56, 58, quoting Little Miami RR. Co. v.Wetmore (1869), 19 Ohio St. 110, 132. `"[A]n intentional and wilful attack committed by an agent o employee, to vent his own spleen or malevolence against the injured person, is a clear departur from his employment and his principal or employer is not responsible therefore.'" Id. at 59, quotin Vrabel v. Acri (1952), 156 Ohio St. 467, 474. "In other words, an employer is not liable fo independent self-serving acts of his employees which in no way facilitate or promote his business. Id.
 {¶ 10} "However, it is commonly recognized that whether an employee is acting within th scope of his employment is a question of fact to be decided by the jury." Osborne v. Lyles (1992), 6 Ohio St.3d 326, 330, citing Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 74 O.O.2 427, 344 N.E.2d 334. "Only when reasonable minds can come to but one conclusion does the issu regarding scope of employment become a question of law." Id. "The willful and malicious characte of an employee's act does not always, as a matter of law, remove the act from the scope o employment." Id., citing Stranahan Bros. Catering Co. v.Coit (1896), 55 Ohio St. 398, 410, an Wiebold Studio, Inc. v. Old WorldRestorations, Inc. (1985), 19 Ohio App.3d 246. "`When a employee diverts from the straight and narrow performance of his task, the diversion is not a abandonment of his responsibility and service to his employer unless his act is so divergent that it very character severs the relationship of employer and employee. * * *'" Id., quoting WieboldStudio 19 Ohio App.3d at 250.
 {¶ 11} In Byrd, supra, the Ohio Supreme Court recognized the possibility that "an employe might be liable for an intentional tort if an employee injures a patron when removing her from th employer's business premises[.]" Byrd, 57 Ohio St.3d at 58. The Byrd court reasoned: "The remova *Page 6 
reasoned: "The removal of patrons, who may be unruly, underage, or otherwise ineligible to enter, i calculated to facilitate the peaceful and lawful operation of the business. Consequently, an employe might be liable for an injury inflicted by an employee in the course of removal of a patron." Id. at 59 citing Stewart v. Napuche (1952), 334 Mich. 76, and Kent v. Bradley (Tex.Civ.App. 1972), 48 S.W.2d 55. Likewise, inO'Neal v. Schear's Metro Markets, Inc. (June 13, 1997), Montgomery App No. 16218, we found a genuine issue of material fact as to whether a store security guard acte within the scope of his employment when using force against an individual who refused to leave th business premises. In our decision, we noted that even if company policy did not authorize th security guard to use force, that fact would not be dispositive. "The relevant inquiry," we explained "is not whether the use of force was authorized, or justified under the circumstances, but whethe that force was used to facilitate or promote [the employer's] business." We then opined tha reasonable minds could find the security guard's acts, "even if wrongful or intentional and not i compliance with company policy, were nevertheless calculated to facilitate or promote the busines for which he was employed."
 {¶ 12} We reach a similar conclusion here. The trial court correctly recognized that Cole' initial encounter with Grubb and Brown took place within the scope of his employment. They met i his office during work hours for the purpose of discussing an account dispute. We believe the tria court erred, however, in finding, as a matter of law, that "the physical aspects of the encounter" wer unrelated to bank business and were outside the scope of Cole's employment.
 {¶ 13} According to SNB Vice President Thomas Locke, Cole was responsible for meeting wit customers to discuss problems and complaints. (Locke depo. at 49-51). In his capacity as branc *Page 7 
capacity as branch manager, Cole met with Grubb and Brown for that purpose. During the meeting he reviewed bank statements with the two women and explained that a disputed check for $150 ha not been charged to Grubb's account. In response, Grubb argued that the statements came from th bank's own computer and that Cole could "make them look any way" he desired. (Cole depo. at 80 At that point, Cole saw no point in continuing the discussion and told the women to "get out." (Id. a 80-81). When Brown refused to leave his office, Cole "got up and walked around the desk to take he by the arm and escort her out." (Id. at 82).
 {¶ 14} In our view, a trier of fact reasonably could find that this contact, which allegedly injure Brown, occurred in the scope of Cole's employment as branch manager. In his deposition, Lock agreed that Cole's responsibilities included escorting someone off of the property, if necessary (Locke depo. at 51). Given Brown's refusal to leave the office, Cole apparently determined that it wa necessary to remove her. Regardless of whether his act of grabbing her arm was against compan policy or justified under the circumstances, a trier of fact reasonably could find that it was related t bank business.
 {¶ 15} We reach the same conclusion with regard to Cole's act of kicking, and possibly hitting Grubb. His physical contact with Grubb came after she pushed or hit him in his office and as h followed the two women toward the exit. Construing the evidence in a light most favorable to th appellants, a trier of fact reasonably might find that Cole was in the process of ejecting them from th premises when the contact occurred. Once again, even if his use of force was against compan policy and entirely unjustified, reasonable minds could find that he was facilitating or promotin SNB's business by removing Grubb and Brown from the premises. *Page 8 
 {¶ 16} In opposition to the foregoing conclusion, SNB argues that Cole was not a securit guard and that he was not authorized to use force to remove a customer. SNB argues that he shoul have "made arrangements" for Grubb and Brown to leave the premises. If a security guard were no available, SNB asserts that Cole should have sought assistance from the police.
 {¶ 17} In our view, the fact that Cole was not a security guard is not dispositive. Althoug O'Neal, supra, happened to involve a security guard, we are not persuaded that the removal of a uncooperative or disruptive customer facilitates or promotes an employer's business only when tha act is performed by a security guard. To the contrary, we believe an office manager such as Col also may facilitate or promote his employer's business by ordering a customer to leave and escortin the customer from the premises. We are equally unpersuaded by SNB's argument that Cole had n authority to use force and should have called the police. As in O'Neal, supra, the issue is not whether Cole exceeded his authority or acted properly. Rather, the issue is whether a trier of fact could fin that his conduct was calculated to facilitate or promote his employer's business. Here reasonabl minds could find that Cole was seeking to facilitate or promote the operation of the bank's busines by expediting the removal of what he perceived as two disruptive and uncooperative customers from the premises. The fact that Cole may have exceeded his authority, and even acted tortiously, doe not mean that he acted outside the scope of his employment. Construing the evidence in a light mos favorable to the appellants, we find a genuine issue of material fact on that question. Accordingly, w sustain the first assignment of error.
 {¶ 18} In their second assignment of error, Grubb and Brown argue that the trial court erred i entering summary judgment against them on their negligent hiring and retention claim. In suppor *Page 9 
claim. In support, they contend a trier of fact reasonably could find that SNB should have foresee Cole's actions. Conversely, SNB argues that it had no reason to suspect Cole would act as he di and that there is no triable issue of fact.
 {¶ 19} Upon review, we find no error in the trial court's entry of summary judgment on th negligent hiring and retention claim. The elements of such a claim are: (1) the existence of a employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of th employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5 a causal link between the employer's negligence in hiring or retaining and the plaintiff's injuries Harmon v. GZK, Inc., Montgomery App. No. 18672, 2002-Ohio-545.
 {¶ 20} In the present case, Grubb and Brown argue that Cole had no prior bankin experience, that SNB failed to conduct a meaningful reference or background check, and that SN provided him with little training. Grubb and Brown also assert that Cole had been dismissed from tw prior jobs and that SNB did not attempt to find out why before hiring him.
 {¶ 21} In our view, none of the foregoing facts suggest that Cole had any propensity fo engaging in tortious conduct or that SNB had actual or constructive knowledge of such propensity The record reflects that Cole was recommended for his job by Alan Bobo, a long-time SN employee. Cole presented a resume that reflected prior work experience as a chief financial officer tax manager, and accountant. He was interviewed twice, and SNB obtained a favorable credit repor prior to hiring him. With regard to the absence of a reference or background check, Grubb and Brow cite nothing unfavorable that such a search would have uncovered, except for the fact that Col previously had been dismissed from two jobs. The record reflects, however, that neither dismissa was for reasons bearing any similarity to the facts of this case. On one occasion, Cole was hired as *Page 10 
facts of this case. On one occasion, Cole was hired as a seasonal employee and was released whe the busy season ended. On the other occasion, he was terminated as part of a reduction in force Moreover, during his more than two years of employment with SNB, Cole's only displays of ange involved twice raising his voice with customers on the telephone. There is no evidence that SNB ha knowledge of these incidents, which, in any event, did not reveal a propensity toward physica violence. In short, we find no evidence of any negligence by SNB in hiring or retaining Cole that coul be construed as a proximate cause of the injuries to Grubb and Brown. Accordingly, we overrule th appellants' second assignment of error.
 {¶ 22} The judgment of the Clark County Common Pleas Court is hereby affirmed in part an reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
FAIN and GRADY, JJ., concur.
Copies mailed to:
Terri L. Parmley
Robert A. Wineberg
James W. Skogstrom
Hon. Richard J. O'Neill
[1] Cindy Grubb's husband, Jeff Grubb, also has appealed from the entry of summary judgment against him on a loss-of-consortium claim. This claim, which is derivative of Cindy Grubb's tort claims against Security National Bank, has not been separately briefed by the parties.
[2] The complaint also alleged negligent training, but the assignment of error on appeal addresses only negligent hiring and retention. *Page 1