THOMAS, APPELLEE, *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION ET AL., APPELLANTS.

(No. 87AP-576—Decided July 12, 1988.)

*Pratt & Buchert* and *James F. Long,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Sheryl Creed Maxfield,* for appellants.

BOWMAN, J. This is an appeal from a decision rendered by the Ohio Court of Claims finding appellants liable to appellee, Kevin Dran Thomas, in the amount of $12,500 plus costs and interest for the injuries he sustained as the result of the actions of Douglas K. Roberson.

This matter arises out of an incident which occurred on March 6, 1984,

at the Lebanon Correctional Institute ("LCI"). Appellee was an inmate there and was working on the food service line under the supervision of Corrections Officer Roberson. Appellee was ordered to refrain from talking while working on the line. Roberson observed appellee and another prisoner, Charles Harper, talking while working. Appellee and the other prisoner were instructed to go to the food service office in the rear of the kitchen for "counseling." Appellee was ordered to stand with his hands in his pocket with his back against the wall.

Apparently, words were exchanged between appellee and Roberson. According to appellee, Roberson became upset when he continued to speak after Roberson told him to shut up. Roberson then approached appellee and struck him across the bridge of his nose with a slapjack. A slapjack is a tubular leather sack filled with lead balls. Appellee had not removed his hands from his pockets, nor did he move away from the wall during this incident. Appellee's nose was broken. He was immediately hospitalized and underwent extensive reconstructive surgery on his nose.

Subsequently, Roberson was discharged after a hearing held before the "Use of Force Committee," a disciplinary committee which investigates incidents involving the use of force at the institution. The committee found that the use of force by Roberson was not justified under the guidelines outlined in Ohio Adm. Code 5120-9-01. Thereafter, appellee filed an action in the Ohio Court of Claims against appellants Department of Rehabilitation and Correction ("appellant") and LCI, as well as William K. Dallman, Superintendent at LCI, and Roberson. Pursuant to R.C. 2743.02(E), Dallman and Roberson were dismissed by the court in a prescreening entry.

Appellee's complaint alleges two causes of action: assault predicated upon the theory of *respondeat superior* and negligent retention of Roberson. Subsequently, appellant filed a motion to dismiss appellee's complaint arguing that, under R.C. 2743.02(A), the state's waiver of immunity is void on the basis that the actions of both Roberson and Superintendent Dallman were outside the scope of their respective authority. The court overruled appellant's motion to dismiss and the cause was tried.

The court held that appellant did not negligently retain Roberson. The court ruled, however, that appellant was liable for the actions of Roberson which it found were carried out in the scope and course of his employment. The court rejected appellant's argument that, since Roberson's use of force was not justified, he necessarily acted beyond the scope of his employment. The court held that:

"This same line of reasoning has been rejected countless times in the law of vicarious liability arising from the doctrine of respondeat-superior. Indeed, the very basis of the doctrine of respondeat-superior is that the master is liable if the servant 'breaks the rules' in furtherance of the master's business. Since no employer specifically authorizes his employee to be negligent or commit intentional torts the concept of vicarious liability would disappear in the face of a rule which declared any action by an employee not in compliance with the employer's standard procedure to be outside the scope of employment."

The court further held that:

"An employee does not leave the scope of his employment unless the act is so divergent that its very character severs the relationship of employer and employee. *Wiebold Studio, Inc.* v. *Old World Restorations, Inc.* (1985), 19 Ohio App. 3d 246.

"* * * In the instant case the

defendant's business was the confinement of inmates and the maintainance [*sic*] of discipline. Roberson was engaged in the disciplining of the plaintiff and another inmate for talking in the food line when he struck the appellee with a blackjack."

From the judgment of the Court of Claims, appellant raises the following single assignment of error:

"The trial court erred in finding that the actions by Corrections Officer Roberson toward plaintiff rendered the defendant liable, as R.C. 2743.02 (A) does not provide a consent by the state to the waiver of sovereign immunity, allowing a suit to be maintained against it, for injury resulting from actions by one of its employees which are outside the scope of his employment or which are malicious or wanton in nature."

Appellant maintains that Roberson was acting outside the scope of his employment when he struck the appellee or that he acted with a malicious purpose and, therefore, the state is not liable. Before ruling on appellant's assignment of error, a general overview is instructive. Under R.C. 2743.02(A)(1), the state has waived its immunity from liability and has consented to be sued in the Court of Claims in accordance with the same rules of law applicable to suits between private parties. However, to the extent that the state has previously consented to be sued, R.C. Chapter 2743 is not applicable. The filing of a civil action in the Court of Claims results in a complete waiver of any cause of action based on the same act or omission which plaintiff has against any state officer or employee. This waiver is void, however, if the court determines that the act or omission was manifestly outside the scope of the employee's or officer's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Under R.C. 9.86, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his or her duties, unless the officer's or employee's actions were manifestly outside the scope of his or her employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Thus, pursuant to R.C. 9.86, an employee who acts in the performance of his or her duties is immune from liability. In such a situation, the state would be a proper defendant and the suit must be brought in the Court of Claims. See R.C. 2743.02(A) (2). However, when a state employee acts outside the scope of his or her employment, or acts with malicious purpose, in bad faith, or in a wanton or reckless manner, the employee will be liable in a court of general jurisdiction.

Ohio Adm. Code 5120-9-01(C), Use of Force, provides in relevant part that:

"There are six general situations in which a staff member may legally use force against an inmate:

"* * *

"(3) Controlling or subduing an inmate who refuses to obey prison rules and regulations;

"* * *"

Also pertinent is Ohio Adm. Code 5120-9-01(E), which provides:

"The * * * staff member of a correctional institution is authorized to use force, other than deadly force, when and to the extent he reasonably believes that such force is necessary to enforce the lawful rules and regulations of the institution * * *."

Superintendent Dallman testified that Roberson had a great deal of control over the prisoners he supervised. It was part of his job duties to maintain

control and discipline over the prisoners and to administer and enforce prison rules and regulations. Dallman testified that failure to obey prison rules and regulations by a prisoner, such as the situation Roberson faced, was a condition upon which the use of force could be used depending on the circumstances. He acknowledged that corrections officers at LCI are vested with a great deal of discretion which requires individual judgment in deciding whether or not to use force, and the extent to which force is used.

Dallman testified that the use of force was a reality in prison life and noted that such judgment calls often involve split-second decisions. Dan Burns, Deputy Superintendent at LCI, also testified that the use of force was permitted by prison guards to enforce prison rules and regulations. He stated that the decision to use force requires a great deal of judgment. Burns was a member of the "Use of Force Committee," which held a hearing on the March 6, 1986 incident. According to Burns, the committee determined that Roberson exercised poor judgment, and found that the use of force was not necessary. The testimony in the record also indicates that Roberson was trained in the use of force. In addition, the slapjack used to strike appellee was authorized equipment assigned to Roberson to carry out his job duties.

Appellee admitted to talking in the line in violation of Roberson's previous order, as well as talking in the office when he was being reprimanded. It was a part of Roberson's assigned duties to maintain discipline and to enforce prison rules and regulations. As earlier noted, under Ohio Adm. Code 5120-9-01, Roberson was authorized to use force when and to the extent he reasonably believed necessary to enforce the lawful rules and regulations which appellee disobeyed. Roberson exercised his individual judgment to use force, albeit determined unjustified.

In sum, there was ample evidence that Roberson disobeyed a direct order; that Roberson was authorized to use reasonable nondeadly force if determined by him to be necessary in such a situation; that the slapjack was a part of his issued equipment; and that he used force which later was determined unjustified by prison authorities.

Although the use of force was determined unnecessary and, therefore, unjustified does not, in and of itself, demonstrate that Roberson's actions were manifestly outside the scope of his employment. Ohio courts have held that the principal shall be liable for the tortious acts of his agent where such acts were done in the execution and furtherance of the principal's business and within the scope of the agent's employment. See *Finley* v. *Schuett* (1982), 8 Ohio App. 3d 38, 39, 8 OBR 41, 41-42, 455 N.E. 2d 1324, 1325. Hence, an agent is acting outside the scope of his authority where the act has no relationship to the conduct of the principal's business or the conduct is so divergent that its very character severs the relationship of employer-employee. See *Wiebold Studio, Inc.* v. *Old World Restorations, Inc.* (1985), 19 Ohio App. 3d 246, 250-251, 19 OBR 398, 403, 484 N.E. 2d 280, 287.

Applying these principles to the instant case, appellant empowered Roberson with the discretionary authority to use nondeadly force in limited circumstances. Appellant also assigned him the necessary instrumentalities to carry out his assigned duties. Appellant cannot now attempt to disavow responsibility for Roberson's unjustified use of force carried out in the performance of his assigned duties. Contrary to appellant's argument, the fact that Roberson's use of force was determined unjustified does not

automatically take his actions outside the scope of his employment. If such were the case, the statute would be devoid of any meaning since anytime the use of force was unjustified the state would be shielded from any liability even where the conduct, as here, was actuated, at least in part, by the purpose to serve the master and in furtherance of prison business.

Appellant's reliance upon *Hester* v. *Church's Fried Chicken* (1986), 27 Ohio App. 3d 74, 27 OBR 93, 499 N.E. 2d 923, is misplaced. That case dealt with an assault by a supervisor upon an employee after the supervisor attempted to reprimand the employee for an unsatisfactory job performance. The court held that the assault, as a matter of law, took place beyond the scope of the supervisor's employment and, therefore, the employer was held not liable under the doctrine of *respondeat superior*.

*Hester* is easily distinguishable since, in contrast to the present case, the supervisor was not authorized to use force in any situation. Appellant herein empowered Roberson with the authority to use force. Accordingly, for the foregoing reasons, this court finds that there was substantial credible evidence upon which the trial court could find that Roberson's conduct was not manifestly outside the scope of his employment.

Appellant also argues that the trial court erred because it did not address whether Roberson's actions were done with a malicious purpose. It is noteworthy that Roberson did not testify in this matter. There is no evidence in the record whatsoever that Roberson's actions arose out of personal ill-will toward appellee or that he held, so to speak, a personal vendetta against appellee. The only evidence in the record was that he used excessive force in the course of carrying out his job duties. Appellee testified that Roberson treated him about the same as any other prisoner.

There was no indication that Roberson intentionally used force against appellee because of improper motives to inflict punishment for personal reasons wholly outside or unrelated to the furtherance of prison business. The fact that Roberson intentionally used force is not dispositive of a malicious purpose, since in certain situations he was authorized to use force. Even though the use of force was determined unjustified, this does not alone render it malicious, especially since there was no evidence presented of ill-will outside the guard-prisoner relationship. The incident did not occur in a docile environment. Absent some evidence in the record, the excessive use of force in this instance cannot, as a matter of law, be considered to have been an act carried out with a malicious purpose.

Therefore, appellants' assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and REILLY, J., concur.