[Cite as *Savage v. Ohio State Univ.*, 2010-Ohio-3227.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SCOTT A. SAVAGE

    Plaintiff

    v.

OHIO STATE UNIVERSITY

    Defendant
    Case No. 2009-06575

Judge Joseph T. Clark

DECISION

{¶ 1} On August 31, 2009, defendant filed a motion to dismiss plaintiff's complaint. On September 17, 2009, plaintiff filed a motion to stay proceedings and a motion for an immunity determination with respect to Norman Jones, Hannibal Hamlin, and Gary Kennedy. According to plaintiff, the named state employees have asserted that they are entitled to immunity from civil liability pursuant to R.C. 2743.02(F) and 9.86. Plaintiff relates that the connected case in the Richland County Court of Common Pleas has been stayed pending a determination by this court whether the above-named persons are entitled to civil immunity.

{¶ 2} By entry dated October 7, 2009, the court granted plaintiff's motions to stay proceedings and for an immunity hearing. On January 20, and February 23, 2010, the court conducted the evidentiary hearing. The parties filed post-hearing briefs on April 9, 2010, and reply briefs on April 19, 2010.[1]

{¶ 3} As stated in his complaint, plaintiff is a devout Christian and a member of

---

[1] The parties' April 16, 2010 joint motion for a one-day extension of time to file reply briefs is GRANTED instanter.

a conservative organization known as the Religious Society of Friends. From August 2004 until July 2006, plaintiff held the position of head of reference and library instruction at the Broomfield Library on defendant's Ohio State University-Mansfield (OSU-M) campus. In February 2006, plaintiff became a member of OSU-M's First Year Reading Experience Committee (the committee) along with faculty members Norman Jones, James Buckley,[2] Hannibal Hamlin, and Gary Kennedy. The committee's task was to suggest titles of books to be included on the required reading list for incoming freshman students. The committee communicated their recommendations via e-mail. Plaintiff asserts that in response to an e-mail citing what he viewed as rather liberal texts, he commented that the books should not be polarizing and he also offered a few more conservative titles.

{¶ 4} In response to plaintiff's e-mail, Hamlin and Jones sent e-mails to the committee criticizing both plaintiff's statements and his selections while defending their position that incoming freshman should be presented with texts that challenge their beliefs and generate discussion. In an e-mail to the committee dated March 9, 2006, Jones referred to one of the books on plaintiff's list as "not scholarly" and "designed to be incendiary." Plaintiff's selection of the book, entitled *The Marketing of Evil*, and plaintiff's staunch defense of his selection quickly became the source of contention between plaintiff and the other faculty members. Jones expressed his concerns that the book offered anti-gay sentiments which did not comport with the university's policy of tolerance for those persons who identified themselves as gay, bisexual, lesbian, or transgender.

{¶ 5} In support of his position, plaintiff referenced positive book reviews that had been posted on a well-known internet website identified as "Amazon.com." In one e-mail response, plaintiff added that the book had been endorsed by a "Ph.D. with more scholarly heft than most anyone I know at [OSU-M]." (Defendant's Exhibit G.) Jones, and other faculty took offense at this comment and went on to distinguish their own credentials from those of the person who endorsed the book. Jones also notified plaintiff's supervisor that plaintiff's continued advocacy for such book was inappropriate and caused him to question plaintiff's competence and professionalism as a reference librarian. According to plaintiff, it was his intention merely to oppose what he perceived

---

[2]Mr. Buckley has since died.

to be the totalitarian behavior expressed by the faculty of OSU-M.

{¶ 6} Plaintiff testified that the e-mails initially were confined to members of the committee, then later circulated to all students, faculty, and staff on campus. Eventually, the e-mails were sent to mailbox addresses that were off-campus. Plaintiff stated he was not sure who was responsible for doing that. As the controversy continued to escalate, plaintiff believed that his right to speak freely was in danger of being suppressed and that, therefore, he forwarded the e-mail chain to a member of the Foundation for Individual Rights in Education (FIRE). Once this group became involved, the controversy at OSU-M received widespread attention nationally and there were numerous internet postings and e-mail exchanges.

{¶ 7} On March 12, 2006, Jones sent an e-mail to all faculty members accusing plaintiff of "harassment" and of "creating a hostile work environment." (Defendant's Exhibit L.) At a March 13, 2006 faculty meeting Hamlin accused plaintiff of engaging in sexual harassment and of defending hate literature. On March 16, 2006, Kennedy filed a discrimination/harassment complaint against plaintiff with OSU-M's Human Resources officer and general counsel. (Defendant's Exhibit P.) On March 20, 2006, Hamlin filed a similar complaint alleging that plaintiff engaged in inappropriate behavior that may constitute harassment. (Defendant's Exhibit Q.) In his complaint, Hamlin noted that while plaintiff and Jones had met and resolved their differences, Hamlin remained dissatisfied with the university's handling of the matter. Hamlin explained that "no public apology or explanation has been forthcoming from Mr. Savage, nor has any statement condemning homophobia been made by the Dean that would clarify the situation, not only to [Jones and Buckley], but also to other (non-'out') gay and lesbian faculty and staff, as well as the rest of the faculty who feel as if the incident was essentially swept under the carpet. * * * An investigation into this matter might reassure them that the University truly does stand, in no *uncertain* terms, behind the right of gay and lesbian employees to a safe and dignified working environment." (Defendant's Exhibit Q.)

{¶ 8} Plaintiff received a letter from an OSU investigator on April 18, 2006, informing him that he had been found not guilty of the charges filed with OSU-M's Human Resources office.

{¶ 9} At the evidentiary hearing, Hamlin testified that, in his opinion, the situation with plaintiff brought to light a deeper problem that existed between the faculty and the administration at OSU-M. Hamlin conveyed that he was not satisfied with the

way the administration responded to what Hamlin deemed "an atmosphere of fear and intimidation." Hamlin also acknowledged that during a meeting he had with the dean, he expressed his opinion that plaintiff should be fired for his unprofessional conduct that "poisoned the campus."

{¶ 10} In July 2006, plaintiff took a leave of absence from his position in response to what he characterized as extreme emotional distress that he had endured as a result of the defamatory statements of OSU-M's employees and the fallacious charge of sexual harassment filed against him.

{¶ 11} R.C. 2743.02(F) provides, in part:

{¶ 12} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 13} R.C. 9.86 provides, in part:

{¶ 14} "no officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were *manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.*" (Emphasis added.)

{¶ 15} In *Thomson v. University of Cincinnati College of Medicine* (Oct. 17, 1996), Franklin App. No. 96 API02-260, the Tenth District Court of Appeals noted that:

{¶ 16} "Under R.C. 9.86, an employee who acts in the performance of his duties is immune from liability. However, if the state employee acts manifestly outside the scope of his or her employment or acts with malicious purpose, in bad faith, or in a wanton or reckless manner, the employee will be liable in a court of general jurisdiction. * * * Even if an employee acts wrongfully, it does not automatically take the act outside the scope of the employee's employment even if the act is unnecessary, unjustified, excessive, or improper. *Thomas v. Ohio Dept. of Rehab. and Corr.* (1988), 48 Ohio App.3d 86. The act must be so divergent that its very character severs the relationship

of employer and employee. *Wiebold Studio, Inc. v. Old World Restorations, Inc.* (1985), 19 Ohio App.3d 246."

{¶ 17} In his April 9, 2010 brief, plaintiff advised the court that he does not oppose a finding of fact or conclusion of law that Norman Jones is entitled to civil immunity. After careful consideration of the evidence presented at the hearing, the court finds that Norman Jones, Hannibal Hamlin, and Gary Kennedy acted within the course and scope of their employment with defendant at all times and during all interactions regarding plaintiff that are at issue in this case.

{¶ 18} Indeed, as both faculty and committee members, Jones, Kennedy, and Hamlin were expected to voice opinions about specific literature and to engage in discussions regarding the advisability of the members' recommendations. Although the committee members' exchanges became rather heated and emotionally charged, the discussions took place within the context of their university employment. The subsequent proceedings regarding sexual harassment were similarly related to Jones, Kennedy, and Hamlin's university employment.

{¶ 19} In addition, the court finds that plaintiff failed to prove, by a preponderance of the evidence, that the above-listed individuals acted with malicious purpose, in bad faith, or in a wanton or reckless manner toward plaintiff. Although the charges of sexual harassment were ultimately determined to be without merit, the evidence does not support the conclusion that charges were made for an improper purpose. Accordingly, the above-mentioned individuals are entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and the courts of common pleas do not have jurisdiction over civil actions against them based upon the alleged actions in this case.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SCOTT A. SAVAGE

    Plaintiff

v.

OHIO STATE UNIVERSITY

      Defendant
      Case No. 2009-06575

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>


The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F). Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Norman Jones, Hannibal Hamlin, and Gary Kennedy are entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case.

Therefore, the court's October 7, 2009 entry staying proceedings is hereby VACATED. Plaintiff shall file a response to defendant's motion to dismiss within *14 days* of the date of this entry.

 

_____
JOSEPH T. CLARK
Judge


cc:

Amy S. Brown                            Thomas W. Condit
Randall W. Knutti                  P.O. Box 12700
Assistant Attorneys General      Cincinnati, Ohio 45212
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

SJM/cmd
Filed June 14, 2010/To S.C. reporter July 7, 2010