[Cite as *Wrinn v. Ohio State Hwy. Patrol*, 2011-Ohio-5963.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

EUGENE WRINN, JR.,

      Plaintiff,                              Case No. 2006-05934

      v.                                     Judge Joseph T. Clark

OHIO STATE HIGHWAY PATROL,

      Defendant.                            <u>DECISION</u>

{¶1} An evidentiary hearing was conducted in this matter to determine whether Daren Johnson and Kenneth Koverman are entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.[1] The case arises out of a traffic accident that occurred on September 16, 2005, at approximately 1:45 a.m. Plaintiff was driving his pick-up truck with two passengers on northbound Interstate 75 (I-75) just north of State Route 309 in Allen County, when it spun on wet pavement and came to rest facing south in the left lane. The vehicle was then struck head-on by a semi truck traveling northbound. The semi truck came to rest in the right hand lane. Plaintiff was rendered unconscious by the collision; the passengers were coherent and able to climb out of the truck. Plaintiff has no memory of the accident or of the events that followed.

{¶2} R.C. 2743.02(F) states, in part:

{¶3} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has

---

[1]Plaintiff's May 20, 2011 motion for leave to exceed the 15 page limitation for his proposed findings of fact and conclusions of law is GRANTED.

exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶4} R.C. 9.86 states, in part:

{¶5} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

## SERGEANT JOHNSON

{¶6} Sergeant Daren Johnson testified that he has been employed with defendant for 18 years and has been assigned to the Lima Post since 2002. Johnson testified that at approximately 1:30 a.m. on September 16, 2005, he was on duty in his patrol car when he heard over his radio that an accident had occurred on I-75 just north of State Route 309. According to Johnson, dispatch directed the accident report to Trooper T.K. Manley, but since he was closer to the scene than Manley was, he notified dispatch that he would respond. Johnson related that when he arrived on the scene of the accident, he observed a pick-up truck facing southbound in the left northbound lane of I-75, and a semi truck facing northbound in the right lane. Johnson stated that he entered the area using the on-ramp from State Route 309, parked his patrol car in the left lane approximately 20 yards south of the pick-up truck, and activated his emergency lights. According to Johnson, vehicles were able to drive around the accident scene using the 309 ramp, and continued to do so until he ordered a road block several hours after his arrival on the scene. However, he stated that traffic was not able to travel in the northbound lanes of I-75 due to the positions of the semi truck and his patrol car. Johnson testified that he was the first law enforcement officer to arrive on the scene, which establishes him as the "officer in charge" until a more senior or higher ranking officer arrives.

{¶7} Johnson testified that as he approached the pick-up truck, he noticed a group of people standing near the northbound/southbound lane barrier wall between

himself and the pick-up. Johnson related that one of the individuals approached him and stated that he had been a passenger in the pick-up and that he wanted Johnson to "check on his buddy" who was still in the pick-up. Johnson stated that as he approached the pick-up he observed plaintiff slumped over and motionless, and that his initial thought was that the individual was dead. According to Johnson, however, as he approached, plaintiff "came to" and exited the pick-up. Johnson testified that he instructed plaintiff to remain in the pick-up so that he could check his injuries, but that plaintiff pushed past him and walked in a northerly direction. Johnson stated that he ordered plaintiff to remain in the truck, but that plaintiff did not respond, comply, or acknowledge his instructions. Johnson testified that he then grabbed plaintiff around the upper arms from behind and attempted to stop him, but that plaintiff "shook [him] off" and continued walking north for a few moments, and then turned south. Johnson stated that as plaintiff continued south, he grabbed him a second time and ended up face-to-face with plaintiff. According to Johnson, he again instructed plaintiff to stop and that plaintiff responded by grabbing him around the biceps so that the two men had their arms around each other. Johnson stated that he instructed plaintiff two more times to let him go with no response; and that the third time he instructed plaintiff to let him go or he would hit him. Johnson testified that plaintiff did not comply, that he repeated the threat, and that when plaintiff again did not comply, he struck plaintiff with his flashlight.[2]

{¶8} According to Johnson, he swung the flashlight in an overhand motion and struck plaintiff in the left shoulder and neck area three times. Johnson stated that after the third strike, plaintiff fell to his knees and wrapped his arms around his waist in a type of "bear hug." Johnson testified that soon thereafter one of the bystanders "pulled him free" and plaintiff simply turned and walked southward once again. Johnson states that he pursued plaintiff, approached him from behind, and attempted to stun him by holding a Taser against the back of plaintiff's leg and activating it. Johnson related that plaintiff went down to one knee after he used the Taser, but that he was not incapacitated to the point that Johnson could get him under control.

{¶9} Johnson testified that after he used the Taser, plaintiff again changed direction and began walking north. Johnson stated that he returned to his patrol car and

---

[2]The flashlight was identified to the court as being constructed of black metal, approximately 14 inches in

issued a "Signal 88" call on his radio. According to Johnson, the Signal 88 is broadcast to all patrol units operating on his radio frequency and to the post dispatch, and signifies an "officer in distress." Johnson testified that after issuing the call, he again pursued plaintiff and caught up with him near the cab of the semi truck. Johnson stated that he once again grabbed plaintiff and attempted to subdue him with "elbow strikes," "knee strikes," and "forearm blows." According to Johnson, at this point he was attempting to place plaintiff under arrest. However, Johnson admitted that he never informed plaintiff that he was under arrest.

{¶10} Johnson testified that while he was attempting to subdue plaintiff at the front of the semi truck, Trooper T.K. Manely arrived on the scene. According to Johnson, he and Manely were able to pin plaintiff to the ground, but that plaintiff continued to struggle. Johnson stated that soon after Manely arrived, several officers from various area law enforcement agencies also arrived on the scene. Johnson testified that these officers joined in the effort to subdue plaintiff such that at one point there were six or seven officers "on top of" plaintiff. According to Johnson, several techniques were employed against plaintiff by the various officers, including knee strikes, hand strikes, elbow strikes, blows with flashlights, pepper spray, a Taser, and at least one officer applied pressure to plaintiff's throat.

{¶11} Johnson testified that eventually the officers were able to place handcuffs on plaintiff and that plaintiff was then placed on a "spine board" and Johnson requested that emergency medical personnel administer a drug to "knock [plaintiff] out." Plaintiff was thereafter transported to an area hospital for medical treatment. Johnson testified that he has investigated over 800 automobile accidents in his career but that he had never encountered an accident victim who acted in such a way.

{¶12} A video of the incident recorded from the "dash cam" of Johnson's vehicle and two videos recorded from the "dash cam" of Lima police officers' vehicles were admitted into evidence and largely corroborate Johnson's version of events. (Plaintiff's Exhibits 1, 2, and 27.)

{¶13} Plaintiff asserts that Johnson acted in a wanton and reckless manner in four ways: 1) he failed to properly secure the accident scene upon his arrival; 2) he did

---

length, and weighing approximately two pounds.

not properly assess plaintiff's injures; 3) he used improper and excessive force against plaintiff; and 4) it was inappropriate to issue "Signal 88." Plaintiff argues that as a result of his actions Johnson is not entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.

{¶14} The issue whether an employee is entitled to immunity is a question of law. *Nease v. Medical College Hosp.*, 64 Ohio St.3d 396, 1992-Ohio-97, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133. The question whether an employee acted outside the scope of his employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner is one of fact. *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9. Plaintiff bears the burden of proving that the state employee should be stripped of immunity. *Fisher v. Univ. of Cincinnati Med. Ctr.* (Aug. 25, 1998), Franklin App. No. 98AP-142.

{¶15} "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term 'reckless' is often used interchangeably with the word 'wanton' and has also been held to be a perverse disregard of a known risk." *Caruso v. State* (2000), 136 Ohio App.3d 616, 620-621. (Internal citations omitted.)

{¶16} In the continuum between negligence and intentional misconduct, "[w]anton misconduct is a degree greater than negligence." *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 515. "'[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'" *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994-Ohio-368, quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96-97. An employee's wrongful conduct, even if it is unnecessary, unjustified, excessive or improper, does not

automatically subject the employee to personal liability unless the conduct is so divergent that it severs the employer-employee relationship. *Elliott v. Ohio Dept. of Rehab. & Corr.* (1994), 92 Ohio App.3d 772, 775, citing *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 89.

{¶17} In support of his claim that Johnson is not entitled to civil immunity, plaintiff presented the expert testimony of Donald J. Van Meter, Ph.D. Van Meter is the principal of Donald J. Van Meter and Associates, Inc., a firm that provides training and consulting services to law enforcement and public safety organizations. Types of training provided by the firm include management, discipline, supervision, and use of force training. With respect to his experience and education, Van Meter was employed by defendant from 1963 through 1978, and he eventually reached the rank of lieutenant and served as a physical fitness and self-defense instructor. He is certified to train instructors at the Ohio Peace Officers Training Academy. Van Meter testified that he personally spends between 65 and 75 percent of his time training and the remainder of his time consulting. In terms of consulting, Van Meter testified that he prepares policy manuals for police departments, develops performance evaluation systems, and develops organizational structure plans for police departments. In preparation for his testimony, Van Meter examined the facts and circumstances surrounding this case, defendant's policies and procedures, and reports generated by defendant as a result of this incident. Van Meter testified that after doing so, he formed an opinion as to the actions of both Johnson and Koverman.

{¶18} With respect to Johnson securing the scene of the accident, Van Meter testified that, in his opinion, Johnson acted recklessly by not securing the scene in such a way as to prevent traffic from progressing through or around the scene. Van Meter opined that Johnson's first order of business should have been to stop traffic completely and then to take all reasonable efforts to protect the integrity of the scene and guard against additional injuries. Van Meter opined that a reasonable officer would have known that failure to properly secure the scene would create an unnecessary risk of physical harm.

{¶19} In assessing plaintiff's injuries, Van Meter opined that Johnson showed a complete lack of concern that plaintiff had suffered a serious head injury as a result of

the accident and treated him as if he were fully capable of understanding and following commands. Van Meter further opined that Johnson acted improperly when he grabbed and attempted to restrain plaintiff without thoroughly assessing his injuries, especially in light of the fact that plaintiff was clearly unresponsive to verbal commands. Van Meter testified that by grabbing plaintiff shortly after encountering him, he unnecessarily escalated the danger.

{¶20} Van Meter further testified that Johnson acted recklessly when he struck plaintiff in the neck and head with his flashlight. According to Van Meter, striking an individual in the manner Johnson testified that he struck plaintiff carries a high risk of serious injury and even death. Van Meter opined that Johnson therefore acted recklessly in striking plaintiff in such a manner and that nothing in his encounter with plaintiff supports Johnson's decision to use such force.

{¶21} Van Meter stated that Johnson continued to act recklessly in his pursuit of plaintiff as he wandered around the scene of the accident. Specifically, Van Meter testified that Johnson acted recklessly when he tried to subdue plaintiff by using his Taser in the "least effective" way and in his subsequent attempts to physically take plaintiff to the ground.

{¶22} Van Meter was also critical of Johnson's decision to issue the Signal 88. According to Van Meter, the Signal 88 is essentially an "officer in distress" call and that it is primarily used when an officer has been injured or is in serious danger. Van Meter opined that the situation at issue did not warrant the Signal 88 and that it would have been more appropriate to simply call for "backup." Van Meter further opined that Johnson was reckless in issuing such a call inasmuch as the officers who responded to it mistakenly assumed that plaintiff posed a serious danger to Johnson and to themselves.

{¶23} In sum, Van Meter testified that, in his opinion, Johnson wantonly failed to exercise any care whatsoever in that: he failed to properly secure the accident scene upon his arrival; he failed to consider the severity and nature of plaintiff's injuries when he first interacted with him and never sought help from bystanders or other first responders; and that he unnecessarily escalated the encounter by grabbing and holding

on to plaintiff, and eventually striking him with his flashlight and employing his Taser improperly.

{¶24} Major Kevin Teaford has been employed by defendant since 1988 and currently serves as the commander of defendant's critical information and communications center. In preparation for his testimony, Teaford reviewed case investigation forms, witness statements, the crash investigation report, reports generated as a result of administrative investigations of Johnson, and the "response to resistance review" investigation report regarding the incident. Teaford testified that the response to resistance review begins with an officer of higher rank than the officer involved in the case collecting evidence, taking photographs of the scene, and interviewing witnesses. When that officer completes the investigation, it is reviewed by the post commander, who determines if the actions of the officer involved were reasonable, if any rules were violated, and whether training issues need to be addressed with the officer involved in the incident. Thereafter, the district commander reviews the incident and performs a similar review. The investigation is then submitted to the administrative investigations unit for a third review. According to Teaford, if it is then determined that something out of the oridinary occurred, the incident is reviewed by a committee comprised of several members of defendant's command staff, who conduct a similar review. If it is determined that the officer acted improperly, a further investigation would be carried out by either that officer's supervisor or the administrative investigations unit.

{¶25} Teaford testified that he reviewed all of the above documents and reports in forming an opinion as to Johnson's actions during the incident. Teaford testified that, in his opinion, Johnson acted within the guidelines and policies of defendant and did not violate any rules or regulations in his dealings with plaintiff. He further opined that Johnson acted reasonably at all times on September 16, 2005.

{¶26} Teaford testified that the responsibilities of the first officer arriving at the scene of an accident are to: assess the scene; secure the scene; attend to any injured person; protect the scene from further damage; and finally to collect evidence and take photographs of the scene. Teaford stated that he did not feel that Johnson violated any

policy in his handling of the accident scene at issue, other than failing to activate the microphone for his "dash-cam" when he exited his vehicle.

{¶27} With respect to Johnson's use of his flashlight to strike plaintiff, Teaford testified that the use of a flashlight in such a manner as described by Johnson is categorized by defendant as "less than lethal" force. Teaford stated that in his opinion, Johnson did not violate any rule or regulation when he used his flashlight to strike plaintiff and that such a use was not unreasonable.

{¶28} Based upon the testimony and evidence presented, the court finds that Johnson did not act in a wanton or reckless manner at any time during the incident on September 16, 2005. The court concludes that Johnson's actions do not rise to the level of wanton or reckless behavior and that such actions did not create an unnecessary risk of harm to plaintiff. Accordingly, the court finds that Johnson is entitled to civil immunity for his actions on September 16, 2005.

**LIEUTENANT KOVERMAN**

{¶29} Lieutenant Kenneth Koverman testified that he began his training with defendant in 1978 and served as the commander of the Lima post from 2001 until his retirement in 2006. Koverman was Johnson's direct superior. Plaintiff asserts that Koverman wantonly and recklessly disregarded Johnson's history of and propensity for violence and failed to adequately discipline and supervise Johnson.

{¶30} Koverman testified that in his capacity as Johnson's supervisor it had been necessary to discipline him on occasion. One such occasion involved an incident between Johnson and Sergeant Cosgrove. According to Koverman, both Johnson and Cosgrove were disciplined for being involved in a verbal confrontation in front of subordinates on January 24, 2004. Koverman stated that he investigated the incident and concluded that Johnson's actions during the confrontation were unprofessional, unnecessary, and created a hostile work environment. Koverman further testified that immediately after the confrontation with Cosgrove, Johnson left the post in his patrol vehicle. According to Koverman, while away from the post, Johnson arrested an individual on suspicion of operating a motor vehicle while intoxicated. After the arrest, the individual filed a "citizen complaint" concerning his treatment by Johnson.

Koverman investigated the allegations of the complaint and testified that as a result, he determined that Johnson used improper force and inappropriate language during the encounter. According to Koverman, as a result of these two incidents, Johnson was issued a three-day suspension with two days held in abeyance for two years pending good behavior. (Plaintiff's Exhibits 19, 21.)

{¶31} Koverman further testified that Johnson was issued a written reprimand as a result of a May 28, 2004 incident where Johnson provoked an individual into threatening him and then stunned the man with his Taser. Koverman stated that Johnson was also directed to take classes on how to deal with difficult people. (Plaintiff's Exhibit 20.) Koverman also stated that in August 2005, he received an anonymous letter regarding Johnson's job performance. (Plaintiff's Exhibit 23.) According to Koverman, he forwarded the letter up the chain of command and an investigation was conducted. (Plaintiff's Exhibit 30.)

{¶32} With regard to the incident with plaintiff, Koverman testified that on September 16, 2005, he was at home in bed when he received a call about the accident. According to Koverman, he arrived on the scene at approximately 2:45 a.m., after plaintiff had been transported to the hospital, spoke with the sergeant in charge of the scene, and then went to the hospital. Koverman prepared a "response to resistance" report regarding the incident because Johnson used his Taser and force when dealing with plaintiff. (Plaintiff's Exhibit 31.)

{¶33} Van Meter also testified on plaintiff's behalf with regard to Koverman's management and supervision of Johnson. Van Meter opined that a reasonable supervisor with the knowledge of Johnson's disciplinary problems as outlined above should know that such problems were going to result in harm to others if not corrected. Van Meter testified that Johnson was an employee with problems and that discipline had little or no effect on his behavior. Specifically, Van Meter stated that Johnson's actions showed a lack of respect for Koverman and that Koverman failed to create an atmosphere at the post that would deter Johnson's aggressive behavior.

{¶34} Van Meter further opined that the proper supervisory action to take would have been to put Johnson under "direct supervision" and have him make regular reports as to his actions and how they promoted defendant's mission. According to Van Meter,

Koverman improperly deferred his disciplinary duties up the chain of command instead of being directly involved. Van Meter testified that Johnson's disciplinary history should have signaled to Koverman that Johnson had violent tendencies and that those tendencies were going to result in harm if he were not more closely supervised. Van Meter concluded that by not managing Johnson's propensity for abusing his authority as a trooper, Koverman recklessly created an unreasonable risk to members of the public. According to Van Meter, Koverman should have known that Johnson was going to take his aggression out on someone who challenged his authority.

{¶35} Based upon the testimony and evidence provided, the court finds that plaintiff has failed to establish that Koverman acted in a wanton or reckless manner in his supervision and discipline of Johnson. The court is unpersuaded by Van Meter's opinion that Koverman's supervision of Johnson rose to the level of reckless or wanton conduct. Accordingly, the court finds that Koverman is entitled to civil immunity for his supervision of Johnson.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

EUGENE WRINN, JR.,

       Plaintiff,                            Case No. 2006-05934

       v.                                 Judge Joseph T. Clark

OHIO STATE HIGHWAY PATROL,

       Defendant.                      <u>JUDGMENT ENTRY</u>

{¶36} The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F). Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Daren Johnson and Kenneth Koverman are entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case.

 

 

_____
JOSEPH T. CLARK
Judge

cc:

Cary R. Cooper                          Eric A. Walker
Jacqueline M. Boney             James P. Dinsmore
Sarah K. Skow                      Assistant Attorneys General
900 Adams Street                  150 East Gay Street, 18th Floor
Toledo, Ohio 43604              Columbus, Ohio 43215-3130

Filed October 17, 2011
To S.C. reporter November 18, 2011