**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0640n.06

Case No. 17-3106

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HOLLY ANDERSON, | ) | **FILED**<br>Nov 17, 2017<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CONNIE SUTTON, In her individual | ) | OHIO |
| capacity, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| DAVID W. DOAK, Sheriff, In his individual | ) | |
| and official capacities; PORTAGE COUNTY | ) | |
| BOARD OF COMMISSIONERS, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| PORTAGE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: CLAY, COOK, and WHITE, Circuit Judges.

CLAY, Circuit Judge. Defendants-Appellants Portage County Board of Commissioners

and Sheriff David Doak (collectively, the "County") appeal the district court's judgment in this

42 U.S.C. § 1983 action. The County argues that it had no duty to defend Defendant-Appellee

Connie Sutton, a corrections officer, from the claims made by a prison inmate, Plaintiff Holly

Anderson, alleging that Sutton assaulted Anderson during a prison fight. For the reasons set forth below, we **REVERSE** the judgment of the district court.

## BACKGROUND

On June 13, 2012, corrections officer Connie Sutton was responsible for overseeing the female section of the Portage County Jail. She was the only officer on duty at the time of the incident in question, and the unit was overcrowded: it had capacity for 34 inmates but housed 52, resulting in cramped conditions. Inmates reportedly were angry about the overcrowding.

At around 8:00 pm, Anderson was in the prison's common area. She then walked through an open doorway to Sutton's desk, to ask permission to attend a church service. Sutton refused, saying church was a privilege and Anderson had been "nasty" all day. Anderson returned to the common area. A few minutes later, she went back to Sutton's desk to request prison grievance forms for herself and a friend. Sutton gave a form to Anderson, but said the friend would have to request one herself. What happened next was captured on two different video cameras.

Anderson returned to the common area and said something to Sutton. She continued walking away, then turned and said something else. According to Sutton, Anderson called her a "nigger bitch" and vowed to "take her down." Sutton called Anderson a "bald-headed heifer." Anderson walked away, towards cell #43. A moment later, Sutton also walked in that direction, holding a grievance form to give to the inmate in that cell. Anderson turned to face Sutton, seeming to impede her progress. At that point, she may have poked Sutton in the chest. The two traded insults, inches apart, until Sutton pushed Anderson away. They then advanced towards each other until Sutton again pushed Anderson away.

A fight ensued. Both Sutton and Anderson threw punches. After about 10 seconds, Sutton wrestled Anderson to the ground. While Anderson was on the ground, Sutton got on top of Anderson, put her hands around Anderson's neck, and repeatedly punched and slapped her in the face. She appeared to choke Anderson, who was squirming beneath her, largely helpless. Anderson eventually managed to crawl a few feet away, at which point she pushed Sutton backward with her feet. She then turned to look at her elbow, which was apparently injured. She made no attempt to get up or otherwise resume the confrontation. While Anderson was lying on the ground, not resisting, Sutton slowly and deliberately walked over and sprayed her in the face with "OC spray," i.e., pepper spray. Anderson shook her head back and forth in an attempt to avoid the spray and then sat on her knees, hunched over and exhausted. Again, she made no attempt to get up or otherwise resume the confrontation. Nonetheless, Sutton walked around her and again sprayed her in the face with pepper spray. At that point, the altercation ended. Anderson was hunched over panting, repeatedly saying "I can't breathe."

Within 24 hours, the County put Sutton on administrative leave. Two days later, Sutton was fired. She was later convicted in Ohio state court of aggravated felonious assault on Anderson. The jury in that case rejected Sutton's defense that her use of force was justified.

In 2014, Anderson sued Sutton and the County in the district court under 42 U.S.C. § 1983, for cruel and unusual punishment. The court appointed *pro bono* counsel for Sutton. The County asserted a cross-claim against Sutton, demanding indemnification against any unfavorable judgment. Sutton asserted cross-claims against the County, demanding indemnification and a paid legal defense.[1] Her duty-to-defend claim was based on Ohio Revised

---

[1] Although Sutton already had *pro bono* counsel, the duty-to-defend issue potentially affects possible attorney's fees. Specifically, if there was a duty to defend, then *pro bono* counsel may be entitled to attorney's fees from the County. *Rogers v. Youngstown*, 574 N.E.2d 451 (Ohio 1991).

Code § 2744.07(A)(1), which states that a defense will be provided to any state employee whose challenged action was taken in good faith and was not manifestly outside the scope of employment.

The only claim relevant to this appeal, however, is Sutton's duty-to-defend cross-claim against the County. At a deposition, Sutton was asked whether the altercation with Anderson "was an exercise of [her] duties as a correctional officer in controlling or subduing an aggressive inmate." Sutton answered yes. She was also asked whether her actions were "necessitated by [Anderson's] actions . . . ." Again, she answered "yes." She said Anderson had put "her hand behind my neck and pull[ed] me down," causing the resulting wrestling match. She said she used pepper spray the first time because Anderson was "aggressive" and "not under control." But, according to Sutton, the spray "missed," so she sprayed Anderson a second time. She denied using force "for the purpose of disciplining [Anderson] for her aggressiveness."

The County moved for summary judgment on the duty-to-defend claim, and the district court denied the motion. Viewing the evidence in Sutton's favor, the district court provided the following account of the incident in question:

> Before reentering the day space, the video shows Anderson gesticulating towards Sutton's desk. This lends support to Sutton's version of the encounter: Anderson verbally attacked her for not allowing Anderson to attend church services and, while doing so, Anderson physically crossed a line on the floor that inmates are required to stand behind. It is also true that Sutton called Anderson names. While unprofessional, the name calling was not unprovoked or unmatched. The video shows that Anderson continued to argue with Sutton and call her names . . . after Sutton ordered Anderson to return to her mat. It cannot be understated that, Anderson, not Sutton, escalated, what had been just a verbal altercation, into a brawl when Anderson (1) poked Sutton in the right shoulder and (2) repeatedly recoiled into Sutton's reactionary gap [i.e., the arm's length space around a corrections officer], after Sutton twice shoved her away, using a tactic that is within the discretion of corrections officers if the situation calls for it. After the second push out of the reactionary gap, Anderson pulls Sutton's hair.

> From that point forward, Anderson and Sutton fight for thirty seconds. This physical encounter culminates with Sutton's two attempts at calming Anderson with the OC spray.

*Anderson v. Sutton*, No. 14-cv-1272, 2016 WL 1258585, at *9 (N.D. Ohio Mar. 31, 2016). A review of the video of the incident reveals the district court's depiction of events to be largely accurate, except for the district court's account of Anderson being pepper sprayed by Sutton; as explained below, the video reveals the pepper spraying of Anderson to have been gratuitous and unnecessary.

After summary judgment was denied, the duty-to-defend claim proceeded to a bench trial. The district court ultimately ruled for Sutton, reasoning that she had acted in good faith to subdue Anderson, whom the district court characterized as an aggressive inmate. The court incorporated by reference the findings made in its summary judgment ruling. *See Anderson v. Sutton*, No. 14-cv-1272, 2016 WL 7492501, at *5 (N.D. Ohio Dec. 30, 2016). The County timely appealed. In a post-judgment order, the district court deferred determining attorney's fees until this appeal is resolved.

## ANALYSIS

### I. Standard of Review

We review the district court's factual findings for clear error and legal conclusions *de novo*. *See Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 803 (6th Cir. 2015). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quotation marks and citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district

court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* at 574 (citations omitted).

## II.   Analysis

Sutton is entitled to a paid defense if she acted in good faith and not manifestly outside the scope of her employment.   The applicable provision of the Ohio Revised Code reads as follows:

> [A] political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function.  The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities.

Ohio Rev. Code § 2744.07(A)(1).

The district court ruled that this standard was satisfied.  As discussed above, the court blamed Anderson for the fight, finding that she had crossed the red line surrounding Sutton's desk, refused Sutton's orders, escalated the confrontation by poking Sutton's shoulder, and invaded Sutton's reactionary gap. *Anderson*, 2016 WL 1258585 at \*9.  The court stated that the fight "culminate[d] with Sutton's two attempts at calming Anderson with OC spray," which implies a finding that the spraying was intended to subdue Anderson, not to inflict gratuitous punishment. *Id.*  It concluded that "the video paints a largely unambiguous factual picture that is contrary to that suggested by the County." *Id.*

We disagree.  Even assuming that Sutton acted within the scope of her employment and initially acted in good faith during the altercation, our review of the video convinces us that she failed to act in good faith when she twice walked over to Anderson to administer pepper sprays that were clearly unnecessary.  The video of the incident, upon which the district court relied,

shows that when Sutton first sprayed Anderson, Anderson was lying on her back, holding her elbow. She was not a threat. When Sutton sprayed Anderson the second time, Anderson was on her knees, hunched over, looking at the ground. Again, she was not a threat. While Sutton was repeatedly administering the pepper spray, several inmates who were present during the incident can be heard pleading with Sutton to stop pepper spraying Anderson—who appeared to be helpless and prostrate. Consequently, we cannot agree with the district court that these sprays were attempts to "calm" Anderson. Rather, we are convinced that Sutton was attempting to punish or retaliate against Anderson for Anderson's role in the fight. And because we find that Sutton was attempting to inflict gratuitous physical punishment, we conclude that she was not acting in good faith. Therefore, the County had no obligation to defend her.

## CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.

**HELENE N. WHITE, Circuit Judge, dissenting.**

Because the district court's findings were not clearly erroneous and Ohio law does not support the majority's conclusion that the record, particularly the videos, can only support the inference that Sutton acted in bad faith, I dissent.

"[A] determination whether a political subdivision owes a duty to defend an employee is a fact-sensitive issue." *Whaley v. Franklin Cty. Bd. of Comm'rs*, 752 N.E.2d 267, 273 (Ohio 2001); *see also Moore v. City of Cleveland*, 2017 WL 1180701, at *4 (Ohio Ct. App. Mar. 30, 2017) ("We recognize that whether an employee acted . . . in bad faith . . . is generally a question of fact.") (citing *Fabrey v. McDonald Village Police Dep't*, 639 N.E.2d 31 (Ohio 1994)).

As the majority acknowledges, we review the district court's factual findings for clear error. Maj. Op. at 5–6. Under that standard, this court is not entitled "to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Here, the district court found Sutton acted in good faith after holding a full-day evidentiary hearing in which Sutton and the County presented testimony and documentary evidence. Reviewing the record, including the videos, I do not agree that the district court's finding was clearly erroneous.

Sutton testified that she was pulled down to the floor by Anderson, and the video supports that testimony: Anderson was either holding Sutton's neck or her hair when the two went to the ground and Sutton landed on top of Anderson. While Anderson and Sutton were on the ground, Anderson removed a pen from Sutton's pocket. During Sutton's criminal trial, Anderson admitted that she considered using that pen as a weapon against Sutton. Focusing on the pepper spray, Sutton—as the only officer on duty in that portion of the overcrowded jail— could reasonably have believed pepper spray was necessary to subdue Anderson. The majority

concludes that because Anderson was on the ground at the time of the first spray, "[s]he was not a threat." Maj. op. at 7. However, Anderson was also on the ground when she kicked Sutton backward, which undermines the conclusion that Anderson was "helpless and prostrate." *Id.* Sutton testified that she believed Anderson "blocked" the first pepper spray attempt, so she administered the spray a second time. The district court found that the videos supported Sutton's belief: "Comparing Anderson's reaction after the second administration to her reaction after the first, it appears the first attempt was a miss or not a full-on strike, while the second hit its mark." *Anderson v. Sutton*, No. 5:14cv1272, 2016 WL 1258585, at *1 n.2 (N.D. Ohio Mar. 31, 2016).

The district court made its finding of good faith after it had the opportunity to judge the witnesses' credibility in conjunction with the video evidence. *See* Fed. R. Civ. P. 52(a)(6). The videos support both Sutton's and the County's theories. As the County argues, the videos show that Sutton threw the first punch, had her hands around Anderson's neck, and used pepper spray when Anderson was not actively resisting Sutton. However, as Sutton argues, the videos also show Anderson initiating the first physical contact, recoiling into Sutton's reactionary gap, pulling Sutton to the ground by her hair, grabbing a pen from Sutton's pocket, kicking Sutton in the groin, and reacting differently to the second pepper-spray strike. Because the videos support both theories, the district court's "choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 573.

Further, Ohio law does not support the majority's decision. Although the videos justify the conclusion that Sutton's use of force was excessive, that does not mean she acted in bad faith. Citing only its "review of the video," the majority is "convinced that Sutton was attempting to punish or retaliate against Anderson for Anderson's role in the fight." Maj. Op. at 7. The majority concedes that Sutton "initially acted in good faith," but finds she "failed to act in

good faith when she twice walked over to Anderson to administer pepper sprays that were clearly unnecessary." *Id.* Based on that finding, the majority concludes Sutton was acting in bad faith.

However, the majority's conclusion about Sutton's use of pepper spray, standing alone, neither compels nor allows a finding of bad faith. Under Ohio law:

> [B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.

*Buckeye Union Ins. Co. v. New England Ins. Co.*, 720 N.E.2d 495, 499 (Ohio 1999) (quotation marks and citation omitted); *see also Jackson v. McDonald*, 760 N.E.2d 24, 29 (Ohio Ct. App. 2001).

In *Thomas v. Ohio Department of Rehabilitation & Corrections*, 548 N.E.2d 991 (Ohio Ct. App. 1991), an inmate disobeyed a corrections officer's verbal commands. The corrections officer struck the inmate with a "leather sack filled with lead balls," breaking the inmate's nose. *Id.* at 992. A disciplinary committee found the corrections officer used excessive force and he was fired. *Id.* Nevertheless, the court rejected the argument that the officer acted maliciously because "[t]here was no indication that [the officer] intentionally used force . . . because of improper motive[]" and "no evidence in the record whatsoever that [the officer's] actions arose out of personal ill-will . . . or that he held . . . a personal vendetta" against the inmate. *Id.* at 995. There, as here, "[t]he only evidence in the record was that he used excessive force in the course of carrying out his job duties." *Id.*

"Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Wrinn v. Ohio State Highway Patrol*, No. 11AP-1006, 2013 WL 1200256, at *3 (Ohio Ct. App. Mar. 26, 2013). Not every officer using excessive force does so

in bad faith, as "mistakes are sometimes made in judging whether a person is exhibiting aggression." *Martin v. Cent. Ohio Transit Auth.*, 590 N.E.2d 411, 418 (Ohio Ct. App. 1990). Here, the only evidence of Sutton's alleged "bad faith" is her excessive force. Although the majority finds Sutton was "attempting to inflict gratuitous physical punishment," Maj. Op. at 7, *Thomas* makes clear that a finding of bad faith requires some evidence that Sutton had a sinister motive or held ill will toward Anderson. *Thomas*, 548 N.E.2d at 995. There is no evidence to that effect. To the contrary, Sutton denied using force against Anderson as a means to punish her. Sutton testified that she had no prior physical or verbal altercations with Anderson and previously attempted to mentor Anderson. County Defendants did not introduce any evidence to rebut that testimony and the district court found Sutton credible. *See United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) ("This court accords great deference to such credibility determinations.").

Therefore, because the district court's factual findings were not clearly erroneous and because Ohio law does support a finding of bad faith, I dissent.